# MERCANTILE BANK *v.* TENNESSEE, FOR THE USE OF MEMPHIS.

ERROR TO THE SUPREME COURT OF THE STATE OF TENNESSEE.

No. 676.   Argued January 20, 21, 22, 1896. — Decided March 2, 1896.

A judicial sale and conveyance, made under order of court, of the franchises of a corporation whose taxation is limited by the act of the legislature of the State incorporating it to a rate therein named, carries to the pur-

chaser, (if anything,) only the franchise to be a corporation; and a corporation organized to receive and receiving conveyance of such franchises. is not the same corporation as the original corporation, and is liable to taxation according to the constitution and laws of the State in force at the time of the sale, or which may be subsequently adopted or enacted, and is not entitled to the limitation and exemption contained in the original act of incorporation.

THIS also was a bill filed by the State of Tennessee against the Mercantile Bank for the purpose of collecting taxes alleged to be due plaintiff below under the statutes of that State.

The bill alleged that the legislature of Tennessee, by an act passed February 29, 1856, incorporated the Gayoso Savings Institution, and by the third section of the act it was provided that the institution should "pay to the State an annual tax of one half of one per cent on each share of the capital stock, which shall be in lieu of all other taxes." The company, as complainants allege, was duly organized under the act of incorporation, at what date it is not known, but at all events it was engaged in a general banking business in the city of Memphis from a date as early as 1856 down to the year 1869. In that year the institution failed, and a bill was filed by its president, John C. Lanier, in the proper court, for an administration of the affairs of the company as an insolvent corporation under the laws of the State. In the course of the proceedings one E. B. McHenry was appointed receiver of the assets of the company by the court, and on the 11th day of June, 1880, the court directed the receiver to sell the charter of the company. On the 28th of June of that year the receiver did sell the charter at public auction for the sum of $201, to Julius A. Taylor, and the sale was afterwards duly reported to and confirmed by the court. On the 26th of March, 1881, the legislature of the State passed an act changing the name of the company to that of the Mercantile Bank, and thereupon Mr. Taylor undertook to sell the charter to John R. Godwin and others, who organized the bank with a capital stock of $200,000. Since the year 1885 the company has been carrying on a general banking business in the city of Memphis, claiming to be organized under and to have all the rights, privi-

leges, and immunities originally granted to the Gayoso institution, and that by virtue of this claim neither the defendant company nor its shareholders had paid any taxes whatever to the State, county, or municipality since its organization, except the one half of one per cent as provided in the charter.

Complainant charged that it was wholly incompetent to sell the charter of the Gayoso Savings Institution, and that the defendant company had no right or title thereto, and especially that it had no rightful claim to immunity from taxation as contained in that charter, and it is averred that all the stock of the defendant company was subscribed for and issued since the adoption by the State, on May 4, 1870, of the constitution of that year. For the year 1891 the capital stock of the company was assessed at a valuation of $160,000. The bill then further alleged the various statutes of the State of Tennessee providing for the assessment of shares or of the capital stock of corporations, and various other allegations were made tending to show a valid assessment either upon the capital stock or the shares of stock in the hands of shareholders, if the claim for exemption was not well founded. It prayed for a discovery of the names of the shareholders, and that the court may determine whether the corporation or the shareholders have any immunity from taxation under the charter of that company; and that complainants have a decree against the defendant corporation for such taxes, with interest, etc.

To that bill the defendants filed a demurrer, and as grounds thereof stated that the defendant, the Mercantile Bank, was treated and sued in the proceeding as a corporation organized under the charter above mentioned, and exercising all the powers and franchises conferred by it and in the enjoyment of the privileges and immunities bestowed by it, and that, therefore, the complainants cannot treat the defendant as a corporation under such charter and at the same time deny its right and title thereto; that it could not treat the defendant as a corporation under that charter and then deny the existence of the charter; that it could not sue the said defendant as a corporation under the charter for the purpose of imposing burdens on it, and then deny the benefit of the

privileges and immunities conferred thereunder; that if the
Mercantile Bank had no right or title to the charter, and
if the charter was destroyed and ended by the judicial pro-
ceedings referred to, then there was no such corporation as
the Mercantile Bank, and the business conducted under that
name was a mere partnership, and the bill should have been
filed against the persons composing such partnership. Another
ground of demurrer was, that it appeared in the third section
of the charter above mentioned, under which the bank was
organized, and it appeared on the face of the bill, that the
bank was to pay to the State an annual tax of one half of
one per cent on each share of capital stock, which was to
be in lieu of all other taxes, and that this constituted a
contract between the State on the one side and the bank
or shareholders on the other, under which both the capital
of the bank and the shares of stock in the hands of the
shareholders were exempt, and that the various acts of the
legislature subsequent to the grant of that charter and pro-
viding for the assessment of the shares of stock in corpora-
tions, if applied to the defendant corporation, impaired the
obligations of the contract, and were in conflict with section
10, article I of the Constitution of the United States, and
were void.

This demurrer was overruled, with leave to insist upon the
grounds thereof upon the hearing.

Complainants then, by leave of court, filed their amended
and supplemental bill, adding various allegations not material
to here notice, except that it was stated that by a stipulation
between the parties the defendant corporation had assumed
the payment of any liability that might be established against
the shareholders therein, and that the defendant C. Hunter
Raine should be made a defendant in his capacity as a
shareholder, and that whatever liability should be established
against him should be taken as established against all the
shareholders in the defendant corporation, and that the lia-
bility of all those established should be assumed by the
defendant corporation.

To avoid the labor and expense of taking proof and to

bring the case to a final hearing, the parties then agreed upon certain facts, among which were the following: The charter of the Gayoso Savings Institution and all amendments thereto referred to in the pleadings are set forth in the statement. The first section of the charter named certain individuals, and it was enacted that they and their associates and successors "be, and they are hereby, created a body politic and corporate by the name and style of the Gayoso Savings Institution, and by that name shall have succession," etc. Provision is then made for subscription for the capital stock, which is to be divided into shares of $50 each, and when 200 shares shall have been subscribed and the sum of one dollar per share paid thereon the shareholders may meet and elect five directors. The third section contains the exemption clause, which, as therein set forth, is as follows: "Said institution shall have a lien on the stock for debts due it by the shareholders, before and in preference to other creditors, except the State for taxes, and shall pay to the State an annual tax of one half of one per cent on each share of capital stock, which shall be in lieu of all other taxes." Section 4 granted to it the usual banking privileges as therein set forth. An amendment to this charter, passed March 26, 1881, changed the name of the Gayoso Savings Institution to the Mercantile Bank of Memphis. The statement also shows who were the owners of the capital stock of the Gayoso Savings Institution at the time of the commencement of the suit of John C. Lanier against the institution, mentioned in the original bill.

It is also stated that on the 5th day of March, 1881, Julius A. Taylor (the purchaser of the charter at the receiver's sale in June, 1880,) and eight other persons, who were associated with him, held a meeting as stockholders of the Gayoso Savings Institution, the minutes of which meeting are therein set out. The minutes set forth that on the 5th day of March, 1881, a meeting of the stockholders of the Gayoso Savings Institution was held in Memphis, at which certain stockholders were present and who were therein named, and that one of them was elected chairman of the meeting, and he reported that

the requisite number of shares, 200, had been duly subscribed to as follows, (giving the names of the subscribers,) and that the sum of one dollar per share each had been paid in. It was then moved and seconded to proceed to the election of six directors, which was carried, and such directors were then elected. Just before the time of this meeting the parties therein named signed and executed a stock subscription paper, which is in the following words: "We, the undersigned, agree to take stock in the Gayoso Savings Institution of Memphis, Tennessee, to the amount set opposite our respective names, and to pay the same in such manner as may be ordered by the board of directors, having this day paid in the sum of one dollar on each share." (Here follow the names of the subscribers.) These are the "stockholders" who are mentioned in the minutes of the stockholders' meeting. It is stated that this organization of the institution was continued regularly and without intermission, but without the actual transaction of any banking business until 1883, and that in April, 1883, the said Julius A. Taylor and his associates transferred their stock in the corporation, by regular and proper transfer of the certificates of stock, to John R. Godwin and his associates, and on April 17, 1883, John R. Godwin and his associates, at a stockholders' meeting of said corporation, increased the capital stock to $200,000, and began a regular banking business under said charter, and said corporation has, under that organization, continued said banking business down to the present date, with the same capital stock of $200,000.

The regularity of the organization from the 5th day of March, 1881, the date when Julius A. Taylor and his eight associates held the stockholders' meeting above mentioned, is not questioned. Of the $200,000 capital stock which was issued by John R. Godwin and his associates on the 17th of April, 1883, $180,000 was new stock, which was divided between said John R. Godwin and his associates. The Gayoso Savings Institution from the time it was originally organized under its charter in 1856 to the date when the bill was filed in the case of John C. Lanier and others in 1869, ·

regularly paid year after year to the State of Tennessee the commutation tax mentioned in its charter of one half of one per cent on each share of capital stock, and since the 5th day of March, 1881, the defendant corporation, under the name of the Gayoso Savings Institution and the Mercantile Bank, has constantly paid said commutation tax to the State down to this date. It is further stated that the defendants can produce no evidence of the payment of said commutation tax during the interval above shown. Proper copies of the decree of sale of the charter in the case of John C. Lanier against the Gayoso Savings Institution, the receiver's report of the sale and the decree confirming the same are set forth in the agreed statement, and it is admitted that a part of the papers in that case are lost or mislaid and cannot be found.

It was further admitted that on June 10, 1880, the receiver in the case of *Lanier* v. *The Gayoso Savings Institution*, filed a petition in the case asking for instructions as to what should be done with the charter. The petition was lost and no copy could be found. It was stated that there was never any transfer of the certificates of stock from the old stockholders in the Gayoso Savings Institution to Julius A. Taylor and his associates, unless as a matter of law such transfer can be made out as the legal effect of the facts above stated. With one or two exceptions all the old stockholders in the Gayoso Savings Institution were residents of the city of Memphis and the State of Tennessee, and none of them ever claimed any interest in the charter or the business being conducted thereunder or in the stock issued thereunder after the sale of the charter to the said Julius A. Taylor. It was alleged that "the defendants contend that the legal effect of the facts herein stated and of the steps taken in said case of *John C. Lanier* v. *The Gayoso Savings Institution*, as set forth above, was to make a legal transfer of the stock in said Gayoso Savings Institution from the persons who owned the same at the time said bill was filed in said case to the said J. A. Taylor and his associates and their successors. This proposition is denied by complainants, and the question is submitted for decision to the court." Further facts in relation to the assess-

ment of stock are also set forth, as are also certain cross-bills filed by certain depositors in the bank against Lanier, and others who were officers and directors in the bank, alleging fraud on their part in the reception of deposits and in the payment of certain debts or claims. Upon this agreed statement of facts and the bill and supplemental bill and demurrer the parties went to trial.

The decree in the chancery court was in favor of plaintiffs in error on all points. An appeal was taken by the State to the Supreme Court. That court reversed the decree of the chancery court, and held that the plaintiffs in error were not entitled to the immunity from taxation contained in the third section of the charter passed in 1856, and gave a decree against the shares of stock and surplus for the full amount of the taxes claimed by the city and county from the year 1888 down. The defendants below sued out a writ of error from this court, and assigned as ground of error that the judgment of the court should have been in their favor, denying the right of the State or city to recover any taxes from either the corporation or shareholders because of the immunity from taxation granted to them by the third section of the charter, and that a denial of that right deprived the defendants below of the immunity guaranteed to them by the contract contained in the third section of the charter, and that the tax laws affirmed to be valid against them are repugnant to the contract provision of the Constitution of the United States. As a second ground of error, it was stated that the court erred in denying to the corporation, plaintiff in error, an exemption from taxation on its surplus and undivided profits. And the third ground was stated to be error of the court in adjudging a liability of the corporation, plaintiff in error, to pay the privilege tax mentioned therein on the same ground of immunity granted to it by the third section of the charter.

*Mr. T. R. Turley,* (with whom was *Mr. L. E. Wright* on the brief,) for plaintiffs in error.

*Mr. S. P. Walker,* (with whom was *Mr. C. W. Metcalf* and *Mr. F. T. Edmondson* on the brief,) for defendant in error.

MR. JUSTICE PECKHAM, after stating the case, delivered the opinion of the court.

By the original charter granted to the Gayoso Savings Institution in 1856, under which an organization was effected and the institution did business for many years, an exemption was granted to it similar to that granted in the case of the *Bank of Commerce,* just decided, *ante,* 134. That exemption was applicable to the shareholders upon their shares of stock, and did not apply to the capital stock of the institution. The shareholders in this case have been assessed at a greater rate than is permitted by the third section of the charter in question, and the assessment would, therefore, be void if that section is applicable to this case.

The corporation plaintiff in error can make title to the charter in question only by virtue of the sale thereof under the decree in the suit of Lanier against the Gayoso Savings Institution, which was commenced in 1869. There is not a particle of evidence which in terms shows the transfer of the shares of stock in that institution owned by its shareholders at the time when the charter was sold, nor is there any evidence from which such transfer of stock by those shareholders to Taylor and his associates can properly be inferred; neither they nor their assignees of the charter can claim to be the same original corporation by reason of any previous purchase of specific shares held by the former shareholders. The record shows that the receiver was ordered " to sell at public auction to the highest bidder for cash the charter of the Gayoso Savings Institution, together with all the rights and privileges thereunder." It was the charter which the receiver assumed to sell and which alone he did sell, and not any specific shares of stock. The report of the receiver shows that under that order, which was made on the 11th of June, 1880, he advertised the charter of the Gayoso Savings Institution for sale on the 29th day of June, 1880, "together with all rights, privileges and franchises thereunder," and that on the last named day the charter was struck off and sold to Julius A. Taylor at and for the sum of $201, " his being the highest, best and

last bid; that such bid was followed by paying to the receiver the amount of same in cash, which the receiver holds subject to the order of the court." On the 21st of July, 1880, the chancellor made a decree, in which it is stated that the cause "came on to be further heard on the report of sale by the receiver filed herein, which is in words and figures following: [Here insert report;] and there being no exception to said report, the same is in all things confirmed, and the title to the charter of the Gayoso Savings Institution, with all the powers, privileges and franchises thereunto belonging, is hereby vested in J. A. Taylor, his heirs and assigns." This citation from the record is clear evidence of what the transaction purported to be. There is no mention or hint of any assignment or transfer of the shares of stock to the purchaser of the charter by the then owners of such shares, and it seems to be quite clear that none such was ever made. At any rate, there is not the slightest proof upon the subject showing affirmatively that it was made. At the time of the sale of the charter under the decree in the Lanier suit the constitution of Tennessee had been adopted by the people in 1870, and since that time has been in full force and operation. That constitution prohibited exemptions from taxation, and provided that all property, real, personal or mixed, should be taxed, excepting such as in explicit terms was exempt, stating what property might be and what should be exempt from taxation, and directing that all the rest shall be taxed.

We may inquire now, what was the effect of the sale of the charter under the decree in the *Lanier case?* We have been referred to no statute authorizing the sale of charters of corporations circumstanced as the Gayoso Savings Institution was at the time of this sale, and it is questionable, to say the least, whether any title to the charter passed by the proceedings under the decree in the *Lanier case.* In order to show the existence of a contract of exemption the corporation plaintiff in error must connect itself with and show that it or its shareholders are entitled to the benefit of the provision of exemption contained in the charter of 1856. Certainly no greater power was exercised by the court of chancery in de-

creeing the sale of the charter in the Lanier suit than would have been the case had a statute existed providing for the mortgaging of the charter, and its subsequent sale at foreclosure, on breach of condition named in the mortgage. Such a sale, it has been held, does not transfer to the purchaser the franchise to be a corporation, but only the right to reorganize as a corporation, subject to the laws, constitutional and otherwise, existing at the time of the reorganization. *Memphis & Little Rock Railroad* v. *Railroad Commissioners*, 112 U. S. 609. The franchise to be a corporation is distinguished from the franchise to exercise as a corporation the banking powers named in this charter. The exemption from taxation contained in the third section of the act of 1856 was a personal privilege in favor of the corporation therein specifically referred to, and it did not pass with the sale of that charter, and there is no express or clear intention of the law requiring that exemption to pass as a continuing franchise to the purchaser thereof. *Morgan* v. *Louisiana*, 93 U. S. 217; *Wilson* v. *Gaines*, 103 U. S. 417; *Louisville & Nashville Railroad Co.* v. *Palmes*, 109 U. S. 244. In the face of the constitutional provision prohibiting exemption, it can still less be claimed that the sale of the charter carried the exemption. All that Mr. Taylor and his associates could have acquired by the purchase of the charter, after the adoption of the constitution of 1870, if they acquired anything, were the rights and privileges mentioned in the charter, and subject to the provisions of the constitution and laws existing at the time of such purchase.

The meeting of Julius A. Taylor and his eight associates on the 5th of March, 1881, was nothing more than an attempt to reorganize by reason of the sale to Taylor under the decree in the Lanier suit. Immediately prior to the organization of that meeting, Taylor and his associates had subscribed for and agreed to take stock in the Gayoso Savings Institution of Memphis, Tennessee, to the amount set opposite their respective names, and to pay the same in such manner as might be ordered by the board of directors, having that day paid in the sum of one dollar on each share. These subscribers for stock at once held a meeting, assuming to act as stockholders of the

Gayoso Savings Institution, and attempting to reorganize that institution by virtue of the purchase of the original charter, and they assumed by these proceedings to become an organ-ization and corporation known as the Gayoso Savings Insti-tution. It is, at least, very doubtful whether they succeeded in this way in accomplishing that purpose. However that may be, they claimed to be and assumed to act as a corpora-tion known by that name, and there was, so far as appears, no other corporation of that name and no other proceeding on the part of any one claiming to be that corporation or to have any rights therein. Assuming to act as a corporation by the name of the Gayoso Savings Institution of Memphis, Tennessee, is by no means the same as being in fact the original corporation whose charter they purchased and whose corpo-rate name they took. So far, by their action they had not become a corporation at all, but were simply assuming to be one. The legislature, however, passed an act on the 26th of March, 1881, changing the name of the Gayoso Savings Insti-tution, which these stockholders claimed and assumed to be, to the name of the Mercantile Bank of Memphis, and thus recog-nized them as a corporation, and from that time the corpora-tion continued regularly and without intermission until 1883, when Taylor and his associates transferred their stock, by regular and proper transfer of the certificates of stock, to John R. Godwin and his associates, who, since the 17th of April, 1833, have been doing a regular banking business under the charter down to the present time. They are the succes-sors of the purchasers of the charter, and have been substan-tially recognized as a corporation by the legislature.

It may thus be that the corporation plaintiff in error is in fact organized and doing business under the general provi-sions of the charter of 1856 by virtue of the sale of the char-ter and the recognition of the legislature, and exercising the banking franchise and other rights granted therein to the original shareholders, but not as the identical corporation originally incorporated, and for that reason it is without the immunity from taxation contained in the third section of the charter. There is nothing, therefore, legally inconsistent in

treating the corporation of plaintiff in error as a corporation doing business by virtue of the charter of 1856, and the legislative recognition accorded to Taylor and his associates in 1881, while at the same time the exemption contained in that same charter is held not to have passed by any of the proceedings above mentioned. This view of the case disposes of the objection taken by plaintiff in error to the position of the State as being inconsistent in that it assumes by taxing the corporation plaintiff in error or its shareholders and by its bill of complaint in this suit to treat the former as a corporation, while at the same time denying it the exemption contained in the third section of the act of 1856. We agree that the bill of complaint and the supplemental bill in this suit both proceed upon an implication that the corporation plaintiff in error is actually a corporation under the provisions of the charter of 1856 alone, and that it has no other charter under which to justify its corporate existence than the one just named; but for the reasons already given, the attitude of the State is not inconsistent in treating the plaintiff in error as a corporation, and at the same time denying to it any title to the exemption claimed. The corporation may exist under and by virtue of the purchase of the charter at the receiver's sale, and the legislative recognition and the assumption of the State that it is a corporation, and yet not have the title to the exemption, because it is not in fact or in law the same corporation originally incorporated.

.The judgment must be

*Affirmed.*

Mr. Justice White concurred in the result.