CASE 36—ACTION TO ENFORCE PAYMENT OF STOCKHOLDERS' DOUBLE
LIABILITY TO CREDITORS OF THE CORPORATION—JUNE 14.

# Senn, &c., v. Levy.

APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION.

JUDGMENT FOR PLAINTIFF AND DEFENDANTS APPEAL.  AFFIRMED.

CORPORATIONS—DOUBLE LIABILITY OF STOCKHOLDERS—EFFECT OF
AMENDMENT OF ARTICLES UNDER NEW LAW TO IMPOSE LIABILITY
CREATED BY THAT LAW.

Held:    1. Where a corporation created after the adoption of the
present Constitution, but prior to the enactment of the corpora-
tion law of April 5, 1893, amended its articles of incorporation
with the consent of the owners of two-thirds of its capital stock,
as authorized by that law, so as to change its corporate name
and the number and qualifications of its directors, it thereby
became a corporation under that law, and its stockholders sub-
ject to the double liability to creditors provided for therein; the
amendment of the articles of incorporation under the new law
being, in effect, a reorganization under that law.
2. A corporation created after the present Constitution was adopted,
but prior to the enactment of Acts April 5, 1893, relating to
private corporations, was not required to accept the provisions
of the new Constitution to entitle it to amend its articles by
the written consent of the owners of two-thirds of its capital
stock, as provided by the new law.
3. A judgment in favor of creditors against the stockholders of a
corporation for double the amount of their stock was properly
made to bear interest from the date of the institution of the
action to enforce the liability.

O. A. WEHLE, ATTORNEY FOR APPELLANT.

The German-Real-Estate and Investment Company was in-
corporated in January, 1893, long after the present Constitution
had gone into effect by the filing of articles of incorporation
under the provisions of chapter 56 of the General Statutes.

On February 1, 1894, it filed in the Jefferson county clerk's
office by consent of holders of two-thirds of its stock, amend-
ments to its articles changing its name to German-American

Senn, &c., v. Levy.

Title Company. It did this without having first formally accepted the Constitution of Kentucky as section 574, Kentucky Statutes, requires. The company failed in May, 1896, and made an assignment for the benefit of its creditors, from which nothing can be realized for its general creditors. The appellee, Sol Levy, sued on an unsecured debt and sought to render the stockholders of the corporation liable for all the debts of the corporation.

The appellant as a defense contends:

1. A corporation organized before the act of April 5, 1893, had under that act (section 574, Kentucky Statutes) the right to amend its articles without making thereby its stockholders individually liable for debts contracted before September 28, 1897.

2. That statute intended that it should apply to "old corporations" only after September 28, 1897, unless they reorganized under it (section 554) by filing new articles of incorporation, signed and acknowledged by all stockholders (as provided by sections 539 and 540); but that they might after accepting the Constitution amend their articles without coming otherwise under the act.

The Constitution (sections 190-208) contains no section providing for the liability of stockholders for corporate debts, and to accept the Constitution, therefore, does neither expressly nor by implication, accept any provision concerning such liability.

## AUTHORITIES CITED.

Ky. Stats., secs. 539, 540, 554, 559, 573, 574; Megargee v. Wakefield, and in petition for rehearing; Endlich on Statutes, secs. 4, 17; Harrington v. Smith, 28 Wis., 43; In re First Presbyterian Church, 107 Pa. St., 543; County of Erie v. Comr. of Water Works, 113 Pa. St., 372; Pittsburg v. Kalchthaler, 114 Pa. St., 552; Hoge v. R. R. Co., 99 U. S., 348; Keokuk R. R. Co. v. Mo., 152 U. S., 301; Maine R. R. Co. v. Maine, 96 U. S., 499; Phil. & W. R. R. Co. v. Maryland, 10 Howard, 376; Memphis City Bank v. Tennessee, 161 U. S., 186; Mercantile Bank v. Tennessee, 161 U. S., 161; Phoenix F. & M. Ins. Co. v. Tennessee, 161 U. S., 174; Cin., Ham. & Day. R. R. Co. v. Cole, 29 Ohio St., 126; Tibballs v. Libby, 87 Ill., 142; Buffalo R. Co. v. Dudley, 14 N. Y., 336; Town of Reading v. Wedder, 66 Ill., 80; Bucksport v. Buck, 68 Me., 81; Milwaukee Co. v. Field, 12 Wis., 340; Howard v. Glenn, 85 Ga., 238; Cin. Coop. Co. v. Bate, 96 Ky., 356; Austin v. Winchester Tel. Co., 28 N. Y., 77; Thomas v. Dakin, 22 Wend., 9.

C. B. SEYMOUR, as amicus curiae.

While my clients are not parties to this appeal I represent sev-

eral parties who are deeply interested in the question involved. I desire therefore to file a brief as *amicus curiae*.

(*a*) We submit that as the corporation was organized after the adoption of the fourth Constitution a formal acceptance of the Constitution was not necessary.

(*b*) We further submit that the awarding of interest on the face of the stock is error. The stockholder was in no default until the amount to be paid by him was ascertained.

### SYNOPSIS.

1. This corporation was created before April 5, 1893; but after the adoption of the Fourth Constitution.
2. The immunity provided for was valid.
3. That immunity, by section 573, continued until September 28, 1897.
4. The debt sued on and all other debts were contracted before September 28, 1897.
5. The corporation might have accepted the provisions of the statute by reorganizing under section 554; this it did not do.
6. The corporation, without reorganizing, had the right to amend its articles by accepting the provisions of the Constitution (Kentucky Statutes, section 570).
7. An acceptance of the Constitution would have been nugatory; as the Constitution was binding on all concerned without an acceptance.
8. The double liability is not a matter of constitutional source; but the same is altogether statutory; and it was not required to be accepted, and was not accepted.
9. There is no estoppel here; no one has been misled or prejudiced. The corporation had a right to accept the provisions of the Constitution without accepting the provisions of the statute; it availed itself of the right.
10. It was error to allow interest in the judgment. Sackett's Harbour Bank v. Blake, 3 Rich. Eq., 225; Munger v. Jacobson, 99 Ill., 350; Cole v. Butler, 43 Me., 405; Casey v. Galli, 94 U. S., 680; Cleveland v. Burnham, 64 Wis., 361.

D. W. SANDERS, W. W. THUM AND S. E. SLOSS, FOR APPELLEE.

(No brief in the record for appellee.)

OPINION OF THE COURT BY JUDGE BURNAM—AFFIRMING.

The appellee, Sol Levy, brought this suit as a creditor of the German-American Title Company, to enforce the payment of its stockholder's double liability to creditors of the corporation, under section 547 of the act of April 5,

1893.    The German-American Real-Estate & Investment Company was incorporated in January, 1893, under the provisions of chapter 56 of the General Statutes.    By this charter it had power to deal in real estate, to buy and sell securities, and to lend money on them.    In March, 1893, it amended its charter, and by the amendment the powers of the corporations were greatly enlarged, and the company was authorized to conduct a general title-insurance business.    On the 5th of April, 1893, the general act relating to private corporations, found in chapter thirty-two of the Kentucky Statutes, became a law.    On the 1st day of February, 1894, by the consent in writing of the owners of two-thirds of its capital stock, its articles of incorporation were amended by changing the name of the corporation to the German-American Title Company, and its board of directors, which formerly consisted of from three to seven members, to from three to fifteen, and each was required to own forty shares of capital stock instead of twenty, as under the original charter, and the president was authorized to appoint an executive committee, with such powers as the by-laws might give. The company did business under the name of the German-American Title Company until the 5th day of May, 1896, when it made a general deed of assignment for the benefit of its creditors.    On the 22d of January, 1896, while the company was a going concern, it sold to appellee five $500 first mortgage real-estate bonds, on which it guarantied payment of principal and interest, which had been executed to the company on the 14th day of January, 1896, by one Turner and his wife.    These bonds turned out to be second mortgage bonds, and worthless, as a sale of the property under decree of court failed to pay the first mort-

gage, and an execution against the maker of the bonds was
returned, "No property found." Thereupon appellee in-
stituted this suit against the stockholders of the company
on his own behalf, and on behalf of all the other creditors,
to enforce the payment of all subscriptions to the cap-
ital stock, and to compel the various stockholders to pay
an additional sum equal to the face value of their holdings
of stock for the purpose of paying the debts of the com-
pany. It is conceded that, if the stockholders are liable
at all, an assessment for the full amount of the stock held
by them will be necessary to pay the debts of the corpo-
ration.

The stockholders claim that, as the German-American
Real-Estate & Investment Company was incorporated un-
der the provisions of chapter 56 of the General
Statutes, and before the enactment of the private corpo-
ration act of April 5, 1893, now chapter 32 of the
Kentucky Statutes, and they have not accepted the pro-
visions of that act in the manner pointed out by section
554, by a reacknowledgment of their articles of incorpora-
tion, they are not liable, under section 547, for double the
amount of their stock to creditors of the corporation;
while the appellee claims for the creditors that, as the
corporation was organized after the present Constitution
went into effect, no acceptance of its provisions was nec-
essary, and, as its articles of incorporation had been ac-
knowledged by each stockholder after its organization,
it was not necessary that they should again do so, and
that by amending its charter of the 1st of February, 1894,
in accordance with the provisions of section 559 of the
act of 1893, and operating under this amendment, by
changing their corporate name, and making other material
and important alterations in its government, the reorgan-

ization of the company was effected under the new law, and they were thenceforth bound by all of its provisions. The controversy must be determined from the spirit of the act itself.

Section 554 of chapter 32 of the Kentucky Statutes provides that all the corporations then existing under the laws of this State may be reorganized by executing and recording articles of incorporation as provided by that act, and that after they have done so, and complied with the other laws relating thereto, the assets of such old corporation shall be vested in, and become the property of, the new corporation, without deed or transfer, and they then become a corporation under the new law, with all the powers and liabilities conferred and imposed by the act.   Section 570 provides that no old corporation shall avail itself of any of the provisions of the act until it shall have accepted the provisions of the new Constitution.   Section 574 provides that charters of an old corporation may be amended in the manner provided by the statutes, after its acceptance of the provisions of the new Constitution.   Section 559 provides for the amendment of the charters of any corporation by the consent in writing of at least two-thirds of its capital stock, after such amendment shall be signed and acknowledged by a majority of the directors, and filed and recorded as articles of incorporation are required to be; and section 573 of the act says that all charters which are inconsistent with the provisions of the act concerning other similar corporations shall stand repealed, and on the 28th of September, 1897, to the extent of such conflict.

When we consider these sections together, it is clear that the General Assembly intended to put private corporations in this State upon the same footing, and to

force all existing corporations to surrender, as far as possible, special or exclusive rights and privileges held by them, by the acceptance of the new Constitution; and, to effectuate this plain and settled purpose, it was expressly provided that, until the old corporations accepted the new Constitution, no law should be passed for their benefit, nor should they be permitted to avail themselves of any of the provisions of the new act. They were rigidly limited to the rights and powers then held by them. Perhaps the most valuable and necessary right secured to corporations by the act of 1893, which they had not previously enjoyed, was the right of amending their articles of incorporations by the written consent of two-thirds of its capital stock. Experience had demonstrated that it was well-nigh impossible to secure the consent of all the stockholders in any corporation to make any change in its articles of incorporation, however beneficial such change might appear to be to the company. After the amendment of 1894, changing the name of the company, it called in all of its old certificates of stock, and issued new certificates in the new name, and the name itself was an advertisement to the public of the new business in which the corporation had embarked. It held itself out to the public, under its new name, as having amended its charter under the act of 1893, as there was no other law under which they could have amended but the act of April, 1893, and that law imposed the double liability sought to be enforced here. The old law had been absolutely repealed. The change made by the amendment was a radical one. A corporation exists only in its corporate name, and a change of name was an abandonment, not only of the corporate name, but of the corporation itself. The old creature was destroyed, and a

new one sprang into existence, clothed with all the new
powers, and charged with all the new responsibilities im-
posed by the statutes which gave it birth.    See Cooperage
Co. v. Bate, 96 Ky., 360 (16 R., 626) (26 S. W., 538); Beach,
Priv. Corp., section 275.   When the stockholders of the old
corporation accepted certificates of stock in the new con-
cern, they assented to, and acquiesced in, the amendment,
and were thenceforth bound for all 'the liabilities of the
new concern imposed upon it by law.     Necessarily the
liabilities and burdens are co-existent with the benefits.
And there is no difference in principle between a reor-
ganization and an amendment which accomplishes the
same purpose.    In both a new corporation is created,
which is subject to laws in force at the date of its birth.
In Hoge v. Railroad Co., 99 U. S., 348  (25 L. Ed., 33),
an amendment to a charter of a railroad company was
held to bring the corporation under the law in force at
the date of the amendment.    The opinion in that case
by Justice Field is an interesting one, and seems to sub-
stantially decide the question we have here.    The cases
of Keokuk & W. R. Co. v. Missouri, 152 U. S., 301  (14
Sup Ct., 592), (38 L. Ed., 450); Mercantile Bank v. Tennes-
see, 161 U. S., 162, 17 Sup., Ct., 461), (40 L. Ed.,
656); and Phoenix Fire & Marine Ins. Co. v. Tennessee,
161 U. S., 172; (16 Sup. Ct., 471), (40 L. Ed., 660),—in
volve questions similar to the one at bar, and the judg-
ment of the supreme court in these cases is in line with
the conclusion reached in this case.

It is claimed by counsel that the judgment is erroneous
in awarding interest from the date of the institution of
the suit, instead of from the 26th of February, 1901, when
the agreement waiving a reference to the commissioner
was filed.    We think not.    If necessary to pay the debts

of the company, appellants were liable to pay interest from the time when the creditors demanded that they should comply with the provisions of the statute as to their liabilities.    Judgment affirmed.

Judge DuRelle's dissenting opinion:

There is but one question in this case. It is whether the German-American Real-Estate & Investment Company, by adopting an amendment to its articles of incorporation whereby it changed its name to the German-American Title Company, and made a few changes, not particularly material, in the qualifications of its directors, etc., rendered its stockholders subject to the double liability imposed by the new corporation law. The answer to that question depends solely upon the construction of the new corporation act adopted in 1893. When the new corporation law was adopted, under the new Constitution, the manifest intention was to provide a means whereby, in time, the corporations of the State should be classified, and those of each class placed upon the same footing.    It was provided that all corporations thereafter created should be created under the general law, by which their classification was fixed.    The statute looked to the ultimate result of bringing all, or as many as possible, of the corporations theretofore created under the same classification.    There existed a large number of corporations established by legislative fiat to which special privileges had been granted by the Legislature. Some of these had been incorporated before the act of 1856, and relied for the maintenance and preservation of their privileges upon the doctrine of contract rights, established in the Dartmouth College cases.    Many of those incorporated after 1856 were supposed to be protected in

their privileges by the recital of contracts in the acts
which created them.    There was also a large number of
corporations created under the old general incorporation
act, which differed from the new law, especially in the
provision as to the liability of stockholders.    It was de-
sired that all corporations which had or claimed special
privileges should be brought within the operation of the new
Constitution, and their privileges rendered subject to leg-
islative control by repeal or amendment.    So, when the
new act, some sections of which applied to old corpora-
tions, some to new, and some to all, corporations, was
passed, there was inserted in the act a provision which
was intended as a temptation to corporations claiming
special privileges to subject themselves to the terms of
the new Constitution, and a menace to them if they did
not do so.    That was the provision of section 570, that
"no law shall be passed for the benefit of, or in the inter-
est of, any corporation heretofore created or organized by
or under the laws of this State or any other State; nor
shall any corporation avail itself of the provisions of this
chapter, unless such corporation shall have previously,
by a resolution adopted by its board of directors and filed
in the office of the secretary of this State, accepted the
provisions of the Constitution of this State; and such res-
olution, or a certified copy thereof, shall be evidence for
and against such corporation."    This section applied, not
only to old corporations which had special privileges, but
to those which did not; for in terms it applied to "any
corporation theretofore created."    But the new law was
not to be applied to the old corporations in a summary or
drastic manner.    Ample time and a *locus penitentiae* were
afforded them by the terms of the act.    The corporation
in this case did not need to accept the provisions of the new

Constitution; for it was incorporated after the Constitution took effect, and it would have been a vain thing for it to file in the office of the secretary of State an acceptance of the provisions of the organic law under which it was created.    It was therefore at the time it was created exactly in the condition as to legislation as if it had been created before the adoption of the Constitution, and afterwards had accepted the terms of that instrument.

As to corporations theretofore created, the stockholders of which did not desire to subject themselves to the liabilities imposed by the new act, provision was made.    Under section 573, they were given until September 28, 1897, at which time it was provided that any provision of their charters or articles of incorporations, whether granted by special act or obtained under the general law, which were inconsistent with the provisions of this chapter concerning similar corporations, should stand repealed; and the concluding sentence of this section reads:    "After the 28th day of September, 1897, the provisions of this chapter shall apply to all corporations created or organized under the laws of this State, if said provisions would be applicable to them if organized under this chapter." The stockholders of such corporations were given some four years to determine whether they would subject themselves to the liabilities imposed by the new corporation law or not.    They might dissolve their corporations, or they might continue them, and become subject to the new law. They had that time to consider.    If they wished to do so, they might reorganize under the new corporation law, and become a corporation owning all the property of the old corporation, but subject to exactly the same liabilities, and having exactly the same rights, as if they had been incorporated under the new law.    This was pro-

vided for under section 554. To do this it was necessary that every corporator should sign and acknowledge the new articles. Section 554 had provided that "any corporation created by, and existing under, the laws of this State, may organize under the provisions of this chapter," etc. Section 559 then provided that "any corporation may, by the consent in writing of the owners of at least two-thirds of its capital stock, change or amend any of the articles of its incorporation," etc. The decision of the majority is that section 559 simply provided an easier mode of doing what might have been done with additional trouble under section 554.

There is no constitutional question here. Nobody doubts that the Legislature might constitutionally have imposed upon every existing corporation (not protected by the provisions of the Federal Constitution) the double liability as to all contracts thereafter made by it. Nobody doubts that it might have attached that consequence to the adoption of amended articles of incorporation. The question is, what did it do? It surely, by section 573, gave four years in which existing corporations might determine whether they would subject themselves to the liabilities of the new law. It surely also provided, in section 554, a mode whereby they might, by unanimous consent, sooner become subject to those liabilities, if they desired. Did it also, by section 559, which provided that any corporation might amend its articles in an easier mode than the one which had existed under the old law,— that is, by a two-thirds vote,—intend that it should become subject thereby to the liabilities of the new law. If such was the intention, it was easy to say so. The courts must presume that all citizens know the law, but the written law should not be so construed as to make that presumption

a mockery. Here we have a law which provides in one section that the corporators shall have four years to determine whether they wish to be subject to its provisions; in another, that they may become subject to its provisions in a specified mode; and, in still another, that, by doing something else, they may amend their articles of incorporation. By every fair rule of construction, the latter section should not have the effect of the former section. The Legislature must have meant something when it provided a means whereby a corporation could become subject to the present law. The majority opinion holds that it meant exactly the same thing by the provision for amending corporate articles. It is the court's duty to give such a construction to a legislative act as will give effect to all its parts.

The reasoning of the court would be sound if the Legislature had not, in express terms declared when the double liability should attach to the stockholder. By the express provisions of the statute, it attached immediately in all new corporations formed under the act; but in existing corporations formed before the act was passed it did not attach until September, 1897, unless they reorganized under the act. The plain meaning of this was to give until September, 1897, for the existing corporations and their stockholders to adjust their affairs, and avoid liabilities which it had been expressly agreed they were to be exempt from when the corporation was formed. So, unanimous consent was required of the stockholders to reorganize under the new act, in order that a part might not, before September, 1897, impose upon others the double liability which they might be unwilling to assume. The Legislature having seen fit to provide two contingencies in which the double liability should exist, the court is not at liberty to add,

by implication, a third; for this is to add to the words of
the statute, and a statutory liability is never extended by
implication beyond its express terms. The Legislature
drew a clear distinction between reorganization under the
new act and amending the old articles under it. It im-
posed the double liability by express terms in the one in-
stance and not in the other. To say that this corporation
did reorganize under the new act, because it changed its
corporate name by the amendment, is to say that an exist-
ing corporation might reorganize under the new act by the
assent of two-thirds of its stockholders, in disregard of
the mandate of the statute that this should be done only
with the assent of all of the stockholders. If, as suggest-
ed in the opinion, the amendment made in this case was a
reorganization of the corporation, and therefore imposed
the double liability on the stockholders, does not it fol-
low that the action was void altogether, because not taken
in the manner directed by the statute? In other words,
if a reorganization under the statute could only be made
by unanimous consent, and what was done in this case was
a reorganization, does it not follow that it was void be-
cause not done as required by the statute? That is,
how could part of the stockholders, under the guise of
amending the articles, accomplish that for which, by the
terms of the statute unanimous consent was required?

The courts presume that everybody knows the law.
They presume, also, that the laws are published, so that
everybody may in fact know the law. The real publication
to the world of a statute is sometimes much later than the
assumed promulgation. But, in civilized countries, the
law exists somewhere, where the citizens can have access
to it, and see what the language is, even if he can not un-
derstand its meaning. Since the dawn of legal history, it

has always been considered that the laws must be somehow published. The law was published. The citizen had knowledge of what it said. It gave him notice that for four years he was safe from the double liability, if he did not reorganize his corporation under the new law. Of the construction of the court there has been no publication until the imposition of the liability.

There is no question of acceptance. This corporation was created under the new Constitution. It did not have to accept the provisions of that instrument in order to have the benefit of the provisions of the new law which applied to it. Section 559, as to amendment, did apply to it. It accepted and acted under section 559. It claimed the benefit of that section. But it did not thereby claim the benefit of, or make itself subject to, all the provisions of the whole chapter. If it did, then all corporations which have acted under section 576, and accepted its provisions, have also accepted and become subject to the provisions of the whole chapter, and are subject to the double liability by printing the word "Incorporated" after their corporate names. The opinion imposes a liability without warning. It does more. It imposes the liability after notice that a *locus penitentiae* was granted, in which the stockholders of corporations might determine whether they would subject themselves to that liability. It was a liability which no corporator could have dreamed he was incurring by continuing a member of the corporation. Its imposition is, in my judgment, to add to the terms of the statute, and create by implication a liability which its express terms forbid. I therefore dissent from the judgment of the court.

Judge Hobson concurs in the dissent.