## Avery Building Association v. Commonwealth, By et al.

(Decided October 14, 1915.)

### Appeal from Franklin Circuit Court.

Corporations—Taxation—Liability for Organization Tax.—Where a corporation, styled the Home and Savings Fund Company Building Association, was organized with a capital stock of five million dollars, before the enactment of Section 4225 of the statute requiring the payment of an organization tax on the capital stock, and subsequent to the enactment of this statute, the corporation, by amendment to its articles of incorporation, increased its capital stock, changed its name to the Avery Building Association, and prolonged its life, which was about to expire, for a period of years, it thereby became a new corporation, subject to the payment of the organization tax on the original capital stock, although it had paid the organization tax on the increase of its capital stock authorized by the amendment.

WILLIAM KRIEGER and THOS. A. BARKER for appellant.

JOHN C. DUFFY, O'REAR & WILLIAMS and J. P. HOBSON & SON for appellees.

OPINION OF THE COURT BY JUDGE CARROLL.—Affirming.

In 1888, before the adoption of the present Constitution of the State and the laws enacted pursuant thereto, a corporation styled the Home and Savings Fund Company, with a capital stock of five million dollars and a provision for its existence for twenty-five years, was organized under the general corporation laws of the State, or by special act of the legislature, it is not material which. In 1891 the present Constitution went into effect, and in 1893 the legislature of the State enacted what is now section 4225 of the Kentucky Statutes, providing that:

"Every corporation which may be incorporated by or under the laws of this State, having a capital stock divided into shares, shall pay into the State Treasury one-tenth of one per centum upon the amount of capital stock which such corporation is authorized to have, and a like tax upon any subsequent increase thereof. Such tax shall be due and payable on the incorporation of the company and on the increase of the capital stock thereof, and no such corporation shall have or exercise any corporate powers until the tax shall have been paid, and upon payment it shall file a statement thereof with the Secretary of State."

In 1897 the Home and Savings Fund Company amended its articles of incorporation by changing its name to the Home and Savings Fund Company Building Association and accepting the provisions of the Constitution. In June, 1906, another amendment was adopted authorizing the association to increase its indebtedness from ten thousand to twenty-five thousand and increasing its capital stock from five million to six million dollars. In February, 1907, another amendment was adopted increasing the capital stock from six million to seven million dollars. In December, 1907, the articles of incorporation were again amended by increasing the capital stock from seven to ten million dollars. In 1912 yet another amendment was adopted increasing the capital stock from ten million to fifteen million dollars, prolonging the corporate existence for a period of ninety-nine years, and also changing the corporate name from the Home and Savings Fund Company Building Association to the Avery Building Association.

The association paid the organization tax on each increase of its capital stock made by the amendments but did not pay any organization tax on the original capital stock, as there was no law in force at the time of its creation exacting an organization tax.

In 1914 this suit was brought in the name of the Commonwealth by a revenue agent for the purpose of requiring the association to pay the organization tax on its original capital stock of five million dollars and a penalty thereon, as provided by statute, of 20%, amounting to one thousand dollars. The lower court ruled that the association must pay the organization tax of five thousand dollars on its original capital stock and a penalty of one thousand dollars, and this judgment we are asked to reverse.

The theory of the Commonwealth is that the various amendments adopted by the association, and especially the amendment of 1912, had the effect of creating a new corporation, and therefore the present corporation, known as the Avery Building Association, although it has a capital stock of fifteen million dollars, has paid the organization tax on only ten million dollars of this capital stock, and should be required to pay the organization tax on the other five million dollars, as was held by the lower court.

The defense of the association is that the several charter amendments did not have the effect of creating a new corporation, as they only increased the capital stock, changed the name and conferred some additional powers on the original corporation; and so the corporation has paid all the organization tax for which it is liable. The association further pleads and relies on the five year statute of limitation as a bar to a recovery of any organization tax, in the event it should be held that the effect of the amendments was to create a new corporation that would be subject to the organization tax if action to recover it had been taken in seasonable time.

We have had before us several cases dealing with this question. In Senn v. Levy, 111 Ky., 318, a creditor of the German-American Title Company brought suit to enforce the payment of the double liability of stockholders to creditors under section 547 of the Kentucky Statutes. The facts were these: The German-American Real Estate & Investment Company was incorporated under the General Statutes, before the enactment of

section 547 of the statutes and at a time when there was
no double liability on stockholders. In 1894, and in the
manner provided by the Kentucky Statutes for the
amendment of articles of incorporation, the charter of
this corporation was amended. The amendment changed
the name from the German-American Real Estate &
Investment Company to the German-American Title
Company, increased the number of directors and also the
shares of stock each must hold to qualify him as a di-
rector, and further authorized the president to appoint an
executive committee with such powers as the by-laws
might give. In holding that the amendment created a
new corporation and subjected the stockholders to the
double liability statute in force when the amendment was
adopted, the court said:

"It held itself out to the public, under its new name,
as having amended its charter under the act of 1893, as
there was no other law under which they could have
amended but the act of April, 1893, and that law imposed
the double liability sought to be enforced here. The old
law had been absolutely repealed. The change made by
the amendment was a radical one. A corporation exists
only in its corporate name, and a change of name was
an abandonment, not only of the corporate name, but of
the corporation itself. The old creature was destroyed
and a new one sprang into existence, clothed with all
the new powers and charged with all the new responsi-
bilities imposed by the statutes which gave it birth. When
the stockholders of the old corporation accepted certifi-
cates of stock in the new concern, they assented to, and
acquiesced in, the amendment, and were thenceforth
bound for all the liabilities of the new concern imposed
upon it by law. Necessarily the liabilities and burdens are
co-existent with the benefits. And there is no difference
in principle between a reorganization and an amendment
which accomplishes the same purpose."

Com. v. Licking Valley Building Association, 118 Ky.,
791, was a suit by the Commonwealth to recover an
organization tax. The defense was that the association
had been incorporated under the general laws of the State
previous to the adoption of the present Constitution and
the laws regulating corporations now found in the Ken-
tucky Statutes, and hence it was not liable for the pay-
ment of this tax. It appears that by the original articles
the capital stock of the association was one million dol-

lars, divided into two thousand shares of the par value
of five hundred dollars each. The period of its corporate
existence was fixed at twenty-five years, which expired in
May, 1911. In April, 1911, amended articles of incorpora-
tion were filed extending the life of the corporation for
twenty-five years and making some other changes in its
corporate affairs. In holding it liable for the tax, the
court said:

"The amended articles of incorporation did more
than conform to the new statute. They created a new cor-
poration. The old corporation would have expired on
May 19, 1911. The new corporation runs for twenty-five
years from April 19, 1897, and may then be renewed for
a like term from time to time. The highest amount of
indebtedness which the old corporation could incur was
twenty-five thousand dollars. The new company can
issue a capital stock of one million dollars and may incur
an indebtedness of 20% of its paid-up capital. It also
enjoys all the rights, privileges and powers conferred
by the new statute upon building associations organized
under it. We had this question before us in Senn v. Levy,
111 Ky., 318, and according to the principles laid down
in that case the old corporation was destroyed and a new
one, with new powers and new responsibilities, came into
existence. The reasoning of that case is conclusive of
the question."

In Bruner v. Louisville Packing Co., 144 Ky., 471,
the Commonwealth sought to collect from the packing
company an organization tax on amended articles of in-
corporation filed by it in 1910. The company was created
in 1906, with a capital stock of seven hundred and fifty
thousand dollars, upon which it paid the organization
tax at the time of its creation. The amended articles
merely reduced the capital stock from seven hundred and
fifty thousand dollars to three hundred and fifty thousand
dollars, and changed the name of the corporation from
Louisville Packing Company to New Louisville Packing
Company. In the course of the opinion the court said:

"It may be that, where there has been a change in
the name of the corporation, accompanied by a substantial
change in the scope, rights and powers of the corpora-
tion, the amended articles of incorporation have the ef-
fect of creating a new corporation: Com. v. Licking
Valley Building Assn., 118 Ky., 791. No such case is
here presented. No new rights or powers were conferred

by the amended articles. The change in the name itself was slight. It was authorized and made in the manner pointed out by the statute. No new corporation was created. It is simply a case where the old corporation is continued under a slightly changed name, for exactly the same length of time, and with precisely the same rights and powers as were provided in the original articles of incorporation. Being the same corporation and having paid the tax once, and there being nothing in the statute requiring that it be paid the second time, it follows that the judgment of the lower court was proper."

In Ohio Valley Tie Co. v. Bruner, 148 Ky., 358, the question before the court was whether a corporation which had once paid this tax must pay it again when it proceeds to extend its corporate existence by amendment. The court answered this question in the negative, saying:

"If the corporation, however, should by amendment substantially change its scope, rights and powers, there might be a consequent right to exact the organization tax; but that question is not here for decision. The ground of its collection in such a state of case would rest upon the determination of whether the change were so substantial or material as to create in fact a new corporation.

"For the sake of clearness it is to be borne in mind that this decision applies to corporations which have once paid the tax. Should a corporation organized under Chapter 56, of the General Statutes, although already in possession of a corporate existence, seek the benefits flowing from the general corporation laws of the Kentucky Statutes by organizing or amending under them, it would need to pay its organization tax once. This was expressly held in Com. v. Licking Valley Building Assn., 118 Ky., 791. But it would need to pay the tax only once, just as those created under the present general corporation law need to pay only once."

In Com. v. Southern Pacific Co., 164 Ky., 818, the question before the court was whether certain amendments, subsequent to the enactment of section 4225, to the charters of the corporations, which had been created prior to the present Constitution, so changed the nature and character of these corporations as to make them, in effect, new corporations, subject to the payment of the organization tax on the original capital stock, and the court said they did not.

These cases are the only ones dealing with the matter now before us and the precise question we have was not directly involved in any of them, although these cases furnish material aid in determining the question here presented.

It will be observed that the orginal name of this association was the Home and Savings Fund Company, and that in 1897 it changed its name by amendment to that of the Home and Savings Fund Company Building Association. This amendment merely added the words "Building Association" to the title, and it may be conceded that these additional words were merely added to comply with section 856 of the Kentucky Statutes, providing that the words "Building Association" must form a part of the name of every building and loan association. Under these circumstances, we do not think this amendment had the effect of creating a new corporation, as it did not change in any material manner the name or the powers or privileges conferred on the original corporation by the act creating it.

The amendments of 1906 and 1907 merely increased the capital stock and authorized the association to increase its indebtedness above the sum designated in its original charter; and we are inclined to think that these amendments did not have the effect of so changing the powers or privileges of the association as to make it a new corporation in the sense that all of its capital stock would be subject to the payment of the organization tax.

But in 1912 another amendment to the charter was adopted, increasing the capital stock from ten to fifteen million dollars, prolonging the corporate existence, which was then about to expire, for a period of ninety-nine years, and changing the corporate name from the Home and Savings Fund Company Building Association to the Avery Building Association. So much of this last amendment as merely increased the capital stock should not be regarded as the creation of a new corporation within the meaning of the statute subjecting new corporations to the payment of an organization tax; but the radical change made in the name of the association, as well as the extension of its life, must, we think, be treated as the creation of a new corporation, subject to the payment of this tax.

It was held in Senn v. Levy, *supra*, that changing the name of the company from the German-American Real

Estate Investment Company to the German-American Title Company was such a radical change as to create, in fact, a new corporation subject to the laws in force when the amendment was adopted.

In the Licking Valley Building Association case the association extended by amendment to its charter its life, which was about to expire, and conferred upon the association some powers that it did not enjoy under the old charter; and this amendment was held to create a new corporation.

In the Louisville Packing Company case the corporation was created in 1906 and paid an organization tax on its capital stock. After this it reduced its capital stock and changed its name from Louisville Packing Company to New Louisville Packing Company. But the court said this was not the creation of a new corporation and did not subject the corporation to the payment of an organization tax on the new and reduced capital stock authorized by the amendment. It is insisted that this opinion, in effect, overruled Senn v. Levy. We do not so construe it. In holding that the slight change in the name did not have the effect of creating a new corporation, the court was largely influenced by the fact that this corporation had paid an organization tax once *on all* of its capital stock. This was really the controlling point in the decision and this point was reiterated in the Ohio Valley Tie Company case.

In the case we have we find that a corporation known as the Home and Savings Fund Company or as the Home and Savings Fund Company Building Association, it is not material which, was created with a capital stock of five million dollars before the statute authorizing the collection of an organization tax was enacted. We find that by various amendments to its charter this original corporation has been converted into a corporation styled the Avery Building Association, with an authorized capital stock of fifteen million dollars. On ten million dollars of this capital stock it has paid this organization tax, but on five million dollars of it it has not. So that we have now a new corporation with a capital stock of fifteen million dollars upon five million of which the organization tax has never been paid.

It will thus be seen that there is a marked difference between this case and the Louisville Packing Company case and the Ohio Valley Tie Company case, as in each

of those cases the corporation had paid the organization tax on the full amount of its authorized capital stock in existence at the time it was sought to again subject the stock to the payment of another organization tax. In the Southern Pacific Company case the names of the corporations were not changed, the amendments merely conferring upon them larger and other powers than were authorized by the original articles of incorporation. But these powers were in the line of the powers conferred by the original charter and did not, as the court held, make any material or radical change in the nature of the business the corporations were authorized by their original charters to carry on.

This case, we think, falls distinctly within the rule announced in Senn v. Levy, and adhering to the doctrine announced in that case, we see no escape from the conclusion that this corporation is liable for the organization tax on five million dollars of its capital stock. If it should not be required to pay this, it would necessarily follow that a corporation organized under the old statute could, in fact, become a new corporation with new powers and privileges and yet be exempt from the payment of the organization tax to which all other new corporations are subjected. It was manifestly the purpose of the new legislation to put all corporations as nearly as might be on the same footing so far as the general laws of the State were concerned, and if this corporation is not subject to the statute imposing an organization tax, it would be difficult to so amend the charter of an old corporation as to bring it under the influence of this statute.

The defense that the right of the Commonwealth to enforce the collection of this tax is barred by the five year statute of limitation must be held unavailing, as this suit was brought within five years from 1912, when the amendment was adopted that made this corporation subject to the organization tax. We do not, however, decide, as it is not necessary so to do, that the five year statute would bar the collection of the tax if the amendment that converted the old into a new corporation had been adopted more than five years before the organization tax was sought to be collected. In short, we merely mention this question of limitation in passing.

The judgment is affirmed.