'ALSOP v. CONWAY et al.

(Circuit Court of Appeals, Sixth Circuit. May 2, 1911.)

No. 2,073.

1. APPEAL AND ERROR (§ 323*)—NECESSARY PARTIES—SEVERAL JUDGMENT OR DECREE.

The rule which requires the parties to a judgment or decree to join in an appeal or writ of error or that their presence be dispensed with through summons and severance applies only to joint judgments or decrees, and a defendant against whom a several decree is entered, which does not affect his codefendants, may appeal from such portion of the decree without joining them.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 1800; Dec. Dig. § 323.*]

2. BANKS AND BANKING (§ 49*)—DOUBLE LIABILITY OF STOCKHOLDERS— RIGHT TO ENFORCE—KENTUCKY STATUTE.

Ky. St. § 616 (Russell's St. § 2256), authorizes the appointment of a receiver for an insolvent bank or corporation who shall, under the direction of the court, take possession of the "assets of every description" of such bank or corporation and collect or dispose of the debts due it and sell all of its property. Section 547 (section 2131) provides that stockholders in corporations "shall be liable to creditors" only for the unpaid part of their stock, "except stockholders in banks, trust companies * * * shall be liable equally and ratably, and not one for the other, for all contracts and liabilities of such corporations to the extent of the amount of their stock at par value, in addition to the amount of such stock." *Held,* under the decisions of the Court of Appeals of the state, that the double liability of stockholders in a bank or trust company is not an asset of the corporation and cannot be enforced by a receiver appointed under section 616, but the right of action therefor remains in the creditors.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 49.*]

3. COURTS (§ 493*)—CONFLICTING JURISDICTION—FEDERAL AND STATE COURTS —PRIORITY OF JURISDICTION.

The appointment of a receiver for an insolvent trust company by a state court under Ky. St. § 616 (Russell's St. § 2256), to take possession of and administer the assets of the corporation, did not give such court jurisdiction over the enforcement of the double liability of the stockholders, imposed by statute, which right of action is in the creditors and not in the corporation, nor did a petition filed by the receiver asking instructions as to his duties in respect to the enforcement of such liability, to which the stockholders were not made parties, and on which no action was taken, deprive a federal court of jurisdiction to entertain a suit by creditors subsequently brought in that court to enforce such liability.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 493.*

Conflict of jurisdiction of federal courts with state courts, see note to Louisville Trust Co. v. City of Cincinnati, 22 C. C. A. 356.]

4. BANKS AND BANKING (§ 49*)—DOUBLE LIABILITY OF STOCKHOLDERS—ENFORCEMENT IN EQUITY.

Under Ky. St. § 547 (Russell's St. § 2131), which makes stockholders in banks and trust companies liable for an amount equal to the par value of their stock "equally and ratably and not one for the other for all contracts and liabilities of such corporations," the amounts recovered on account of such double liability from the stockholders of an insolvent bank or trust company constitutes a trust fund to be ratably distributed among the creditors, and such liability is properly enforced by a suit in equity brought in behalf of all creditors against all stockholders, who also have a common interest in the ascertainment of the amount of stock, assets,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and indebtedness of the corporation, in which suit such questions can be determined and the fund collected and administered.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 49.*]

**5.** COURTS (§ 328*)—JURISDICTION OF FEDERAL COURTS—AMOUNT IN CONTROVERSY.

In a suit in a federal court by creditors of an insolvent corporation in behalf of themselves and all other creditors to enforce the double liability of stockholders, in the absence of a demurrer the court did not lose jurisdiction because at the time of filing the bill no one of complainants had a matured claim amounting to $2,000, nor because not all of the claims equalled that amount.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 890–896; Dec. Dig. § 328.*

Jurisdiction of Circuit Courts as determined by the amount in controversy, see notes to Auer v. Lombard, 19 C. C. A. 75; Tennent-Stribling Shoe Co. v. Roper, 36 C. C. A. 459; O. J. Lewis Mercantile Co. v. Klepner, 100 C. C. A. 288.]

**6.** COURTS (§ 308*)—JURISDICTION OF FEDERAL COURTS—DIVERSITY OF CITIZENSHIP.

In a suit in a federal court by creditors of an insolvent corporation to enforce the double liability of stockholders on behalf of all creditors, where jurisdiction was based on diversity of citizenship, the court was not ousted of jurisdiction because some of the creditors were citizens of the same state as defendants.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 855, 856; Dec. Dig. § 308.*

Diverse citizenship as a ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.]

**7.** CORPORATIONS (§ 243*)—STOCKHOLDERS—ACTION TO ENFORCE STATUTORY LIABILITY—DEFENSES.

A stockholder in a corporation, who retained his stock and received dividends thereon for more than two years and until insolvency proceedings against the corporation, cannot then rescind and avoid his statutory liability to creditors on the ground that he was induced to purchase the stock from the corporation by the fraud and misrepresentation of its officers.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 958; Dec. Dig. § 243.*]

**8.** BANKS AND BANKING (§ 49*)—STOCKHOLDERS—ACTION TO ENFORCE STATUTORY LIABILITY—EVIDENCE OF OWNERSHIP.

In a suit to charge defendant as a stockholder in an insolvent banking corporation with double liability under the statute, where it was shown that certificates of stock, issued in his name, were in his safety deposit box at the time of the failure, and that he had been credited on his bank book with two dividends thereon, the presumption is that he was the owner of such stock, and the burden rested on him to prove the contrary.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 49.*

Stockholders' liability to creditors in equity. see notes to Rickerson Roller-Mill Co. v. Farrell Foundry & M. Co., 23 C. C. A. 315; Scott v. Latimer, 33 C. C. A. 23.]

**9.** CORPORATIONS (§ 273*)—STOCKHOLDERS—ACTION TO ENFORCE STATUTORY LIABILITY—INTEREST.

On recovery in a suit to enforce the double liability of stockholders in an insolvent corporation, it was proper to allow interest from the commencement of the suit.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1165; Dec. Dig. § 273.*]

Appeal from the Circuit Court of the United States for the Western District of Kentucky.

Suit in equity by John Conway, Amelia Simpers, E. L. Dupuy, and M. B. Dupuy against the Owensboro Savings Bank & Trust Company, T. A. Pedley, its receiver. J. N. Alsop, and others. Decree for complainants, and defendant Alsop appeals. Affirmed.

The appellees, four in number, all being citizens of states, other than Kentucky, on behalf of themselves and all other creditors of the Owensboro Savings Bank & Trust Company (hereafter called the bank) who might choose to become parties to the suit and contribute to the expense thereof, filed their bill in the court below against the bank, T. A. Pedley, receiver of said bank, and a large number of individual holders of the capital stock of the same, including appellant (the defendants being all citizens of the state of Kentucky), for the purpose of enforcing against the individual defendants the so-called "double liability" imposed by the Kentucky Statutes upon stockholders in banks and trust companies organized under the laws of that state. The suit proceeded to final decree in favor of complainants. The appeal is from so much of the decree as required payment by appellant of the sum of $9,000, being the face value of stock in the bank alleged to be owned by him, with interest thereon from the commencement of this suit. The material facts are these:

The Owensboro Savings Bank & Trust Company was organized with a capital stock of $100,000. On December 9, 1905, its capital stock was increased to $200,000, viz., 2,000 shares of $100 each. On April 24, 1908, the bank having become insolvent, T. A. Pedley was appointed (and soon afterwards qualified) as receiver of the bank, by order of the circuit court for Davies county, Ky., by virtue of section 616 of the Kentucky Statutes (Russell's St. § 2256) which provides that:

"The Secretary of State, upon becoming satisfied that any bank or corporation has become insolvent, or that its capital has become, and is permitted to remain, impaired, or that it has violated any of the provisions of the law under which it was organized, may, with the approval of the Attorney General, apply to the circuit court, or judge thereof in vacation, of the county in which the bank or corporation is located, for the appointment of a receiver, who, under the direction of the court or judge, shall take possession of books, papers, and assets of every description, and all business of the bank or corporation, and collect all collectable debts and demands, and sell or compound, under the order of the court, all bad debts, and sell all the real and personal property of the bank or corporation, on such terms as the court may direct."

Section 547 of the Kentucky Statutes (Russell's St. § 2131) provides that:

"The stockholders of each corporation shall be liable to creditors for the full amount of the unpaid part of stock subscribed for by them, and no stockholder shall be liable because of being a stockholder, for any sum more than to the amount of the unpaid part of stock held by such stockholder of any company, except stockholders in banks, trust companies, guaranty companies, investment companies and insurance companies, shall be liable equally and ratably, and not one for the other, for all contracts and liabilities of such corporation to the extent of the amount of their stock at par value, in addition to the amount of such stock. * * *"

Section 595 (section 2184) provides that:

"The stockholders of each bank organized under this article shall be individually responsible, equally and ratably, and not one for the other, for all contracts and liabilities of such bank to the extent of the amount of their stock at par value in addition to the amount of such stock."

The state permits the formation of corporations for the purpose of conducting both a banking and trust company business in counties of the population of that in which the bank in question was located; and under section 613 (section 2253) the stockholders of each trust company are made "individually responsible, equally and ratably, and not one for the other, for all contracts and liabilities of such corporation to the amount of their stock at par value, in addition to the amount of such stock. * * *"

The order of the state court appointing the receiver directed the latter to "take possession of all the books, papers and assets of every description, and all the business of the defendant, Owensboro Savings Bank & Trust Company, and collect all collectable debts and demands of said bank and trust company, and sell or compound, under the orders of this court, all bad debts, and sell all the real and personal property of said bank and trust company, on such terms as this court shall direct," etc. The receiver so appointed, on May 12, 1908, filed his petition in the Davies county circuit court in equity, against the bank and certain of its creditors, the petition containing the statement that, "in order to pay in full creditors of said (bank), including its depositors and other creditors, it will be necessary to resort to the double liability of the stockholders of said (bank) in aid of its property and assets, and he asks to be advised by the court as to his duties with reference to the enforcement of said liability." He asked that each of the creditors of the bank be enjoined from asserting claims or liens upon any of its property and from interfering with the administration of his trust as receiver except in and through the proceeding referred to, and asked the advice and direction of the court with respect to his duties in the winding up and administration of the affairs of the bank, as well as "for equitable and proper relief." Injunction was issued accordingly.

On May 19, 1908, appellees filed their bill in this cause, alleging (in substance sufficient for the purposes of this opinion) that they were respectively creditors of the bank as holders of interest-bearing certificates of deposit therein, amounting in the aggregate to $5,770; alleged the insolvency of the bank, the double liability of its stockholders under section 595 of the Kentucky statutes, the fact that its assets were not more than one-half of its liabilities, and the necessity of assessing each stockholder a sum equal to the par value of his stock for the benefit of the bank's creditors, such assessment being alleged to be insufficient to pay the liabilities of the bank; alleged the appointment and qualification of Pedley as receiver, under the proceedings in the state court, and the receiver's possession of "all the assets, property, etc., of the defendant" bank; that the defendant Pedley, as receiver of the bank, "has no authority to enforce said statutory liability as such receiver, either in law or in equity, said statutory liability being a liability enforceable only by the creditors of the defendant" bank; alleged that the creditors of the bank who have a common and general interest in enforcing the double liability of stockholders are more than 2,000 in number, and so numerous as to make it impracticable to bring all of them before the court in a reasonable time. The bill asked an order permitting complainants to sue "for and in behalf of all the creditors of defendant bank who will unite with them in this suit," prayed judgment against the bank upon complainant's demands; that all other creditors be enjoined from prosecuting any action against the stockholders for their double liability except by uniting in this suit; that "the liability of all stockholders be fully determined and adjudicated; that each defendant stockholder herein be assessed for the benefit of the creditors herein an amount equal to the par value of his stock"; for judgment against the individual defendants for the amounts of their stockholdings; "that all said sums be ordered paid into court; and that same be distributed under order of court, and if necessary a receiver be appointed to collect and enforce the judgment of the court and distribute the funds under order of court," and for general relief.

Upon the filing of this bill, Pedley, the receiver appointed by the state court, was appointed receiver under the bill in this cause "to receive and hold, subject to the orders of the court, all funds collected herein and all funds brought in by reason of said statutory liability herein relied upon and to do all things that may be hereinafter ordered by the court." The appellant here demurred to the bill: First, for lack of jurisdiction of the subject-matter, on the ground that complainants had an adequate remedy at law and that matters of equitable cognizance are not alleged; second, that the bill relates to several distinct and independent matters in which defendant is not interested; third, that the bill is without equity; and, fourth, that the court is without jurisdiction of the parties, in that the bill does not show that the parties for whom the complainants are suing are citizens of states other than Kentucky, or

that their respective claims exceed $2,000. This demurrer was overruled. Appellant answered, alleging (in substance sufficient for the purposes of this opinion) that he was never the owner of but 10 shares of the capital stock of the bank; that he purchased this block from the bank, as part of its increased capitalization and by reason of false and fraudulent representations made by the bank's officers as to the financial condition and solvency of the bank; that he was never the owner of the remaining 80 shares of the capital stock on account of which it was sought to charge him; that said 80 shares belonged to one Parrish; that after the failure of the bank he learned of the transfer of said shares to him under an alleged contract therefor, and at once repudiated the same and returned to the receiver the dividends which had been credited to his bank account upon said shares; that, if he ever contracted to purchase said shares, he was induced to do so by the false and fraudulent representations of said Parrish as to the value thereof and the responsibility and solvency of the bank. Both blocks of stock were, by the answer, tendered back. The answer set up, in bar of this suit, the appointment of the receiver in the state court, the suit by the latter against appellant and others for the settlement of the affairs of the bank and the collecting in of its property and assets, the injunction before referred to, and the fact that the complainants had not requested the receiver appointed in the state court to sue for the statutory double liability. The amount of the bank's indebtedness, shown by the master's report as proven before him, was $778,-134.85. It appeared by the testimony of the receiver that the assets of the bank would realize gross from $175,000 to $225,000; these figures taking no account of the statutory ·double liability of stockholders. The final decree required (so far as necessary to be stated here) payments of the statutory liability from a large number of stockholders, as to some of whom the bill was taken as confessed; the decree requiring such payments into the registry of the court or to the receiver, and, in case execution should be issued, payment into the registry of the court. As already stated, the appellant was required to pay the sum of $9,000 with interest from May 19, 1908, the date of the filing of the bill. By the decree the court reserved full control over all other and further proceedings necessary for the collection and administration of the fund created ·by said statutory liability.

George W. Jolly and Alexander Pope Humphrey, for appellant.
C. M. Finn and Sweeney, Ellis & Sweeney, for appellees.

Before SEVERENS and KNAPPEN, Circuit Judges, and SANFORD, District Judge.

KNAPPEN, Circuit Judge (after stating the facts as above).  [1] A preliminary question arises upon the motion of the appellee to dismiss the appeal on the ground that the parties interested in the appeal are not before the court, or their presence dispensed with through summons and severance.  The rule invoked by appellee relates only to joint judgments.  Ayers v. Polsdorfer (Sixth Circuit) 105 Fed. 739, 45 C. C. A. 24; Gilfillan v. McKee, 159 U. S. 303, 312, 16 Sup. Ct. 6, 40 L. Ed. 161; and cases cited; Winters v. United States, 207 U. S. 564, 574, 28 Sup. Ct. 207, 52 L. Ed. 340.  That portion of the decree from which the appeal is taken is clearly several as to the defendant Alsop.  It is true that such provision has the effect to deny the right of recovery by the bank and its receiver in the state court proceeding; but that does not make the judgment joint.  Moreover, the receiver appointed by the state court is not aggrieved, as he is also the receiver in the federal court, and the bank's rights are represented by the receiver.  Indeed, it is stated in appellee's brief that the bill in this cause was taken as confessed by both the bank and the receiver.

The appellants attack the decree below upon several grounds, which will be separately considered:

[2] 1. That the double liability of the stockholders in a bank organized under the laws of Kentucky is enforceable by the receiver provided for by the laws of that state, and not by the creditors of the insolvent corporation.

Sections 547, 595, 613, and 616 are all contained in chapter 32 of the Kentucky Statutes (Russell's St. c. 11), relating to private corporations, section 547 being found in article 1, which contains general provisions relating to such corporations; section 595 being in article 2, relating to banks; and sections 613 and 616 being found in article 3, which relates generally to trust companies. It will be noted that, while section 547 expressly declares that stockholders "shall be liable to creditors" for the recovery in question, the words last quoted are omitted from sections 595 and 613, and the words "individually responsible" substituted. It is argued from this fact that the sections relating to banks and trust companies are to be distinguished in the respect referred to from the section relating to corporations generally. We think this point is not well taken. By section 538 (section 2121), which is the opening section of the chapter relating to private corporations, the general provisions of the article are made applicable to banks, trust companies, and certain other named corporations so far as "not inconsistent with the laws relating specially to them." We find no inconsistency between the general provisions cited and the special provisions relating to banks and trust companies. Moreover, the double liability of stockholders in banks, trust companies, and certain other corporations is expressly declared by section 547. It is clear that, if the liability in question is directly from the stockholder to the creditor, the latter only, and not the corporation or its receiver, are the persons entitled to enforce it. The claim in such case is not an asset of the corporation, and so would not pass to the receiver appointed under the state law, who, under section 616, acquires only property, rights, and assets of the corporation. See Mechanics' Savings' Bank v. Fidelity Ins. Co. (C. C.) 87 Fed. 113, 116; 1 Cook on Corporations (6th Ed.) § 218. We think the question we are considering is ruled by Tiger Shoe Mfg. Co.'s Trustee v. Shanklin, 125 Ky. 715, 102 S. W. 295, where it was held, construing section 547 of the Kentucky Statutes, that, while an assignee in bankruptcy of a mercantile corporation could maintain an action for unpaid subscriptions, he could not maintain an action against stockholders to enforce the statutory double liability. We find nothing in the other decisions of the Court of Appeals of Kentucky (viz., Senn v. Levy, 111 Ky. 318, 63 S. W. 776; Covington Co. v. Rosedale, 76 S. W. 506, 25 Ky. Law Rep. 964; Bracken v. Nicol, 124 Ky. 628, 99 S. W. 920, 11 L. R. A. [N. S.] 818; Weakley v. McClarty, 136 Ky. 838, 125 S. W. 265, 136 Am. St. Rep. 279; Ky. Mutual Ins. Co.'s Assignee v. Schaefer, 120 Ky. 227, 85 S. W. 1098; Gamewell, etc., Co. v. Fire & Police Tel. Co., 116 Ky. 759, 76 S. W. 862) in conflict with Tiger Shoe Mfg. Co.'s Trustee v. Shanklin. It is true that in the Gamewell Case the stockholders' liability is spoken of as an asset of the corporation.

But this remark is purely obiter, for the action there was on the part of creditors, and did not involve the rights of a receiver under the state statute. Moreover, it is not in harmony with the later case of Tiger Shoe Mfg. Co.'s Trustee v. Shanklin. In our opinion, the right of action for the double liability of stockholders in the bank did not pass by virtue of the Kentucky statutes to the receiver appointed under those statutes, but remained in the creditors.

[3] 2. It is urged that the state court, by virtue of the proceedings taken by the receiver appointed by that court, acquired exclusive jurisdiction over the administration of the estate of the insolvent bank, including the enforcement of the stockholders' double liability.

It may be conceded that, if the state court has acquired jurisdiction over the enforcement of the stockholders' double liability, the court below had no jurisdiction over that subject. As already stated, however, the receiver obtained by virtue of the Kentucky statute no authority to recover on account of this liability. The order appointing the receiver did not attempt or purport to pass such right as an asset of the bank. If, therefore, the state court obtained exclusive jurisdiction over the subject-matter of this controversy, it must have done so by virtue of the proceedings taken in that court for such recovery. But the proceedings there had cannot be so construed. The petition filed by the receiver in the state court did not make stockholders of the bank parties defendant. The petition showed that, in order to pay the bank's creditors in full, it would be necessary to resort to the double liability of stockholders; but as to this subject the receiver merely asked to be advised by the court as to his duties. He sought no such recovery in that action. It would have been entirely competent for the state court, had the receiver been thought entitled to maintain suit for such liability, to authorize the institution of proceedings either in the state or the federal court; but the record does not indicate that such course was taken, or that the state court paid any attention to the request for instructions referred to. So far as may be inferred from this record, the state court has proceeded with the administration of the bank's affairs entirely irrespective of the matter of double liability, and the federal court is proceeding to collect and administer the funds arising from that liability. The same person is acting as receiver of both courts. In these circumstances, no conflict of jurisdiction is apparent. It should go without saying that, if the court below has jurisdiction, it is not because of any special jurisdiction over the subject-matter, but because of the asserted diversity of citizenship of the parties, which subject will be considered later. In our opinion, there is nothing in the proceedings in the state court to interfere with the exercise of jurisdiction as actually exercised by the court below.

[4] 3. It is earnestly contended that there is no equity in the bill, for the reason that each stockholder is liable equally and ratably, and not one for the other; that it is necessary to collect the whole amount of the double liability from each stockholder; and that the suit should thus be at law. The argument is that the liability of each stockholder presents a separate legal question in which that stockholder alone is

concerned, and that there is thus no basis for invoking equity to prevent multiplicity of suits.

The determination of this question involves a consideration of the nature of this suit. While section 547 of the Kentucky Statutes provides that stockholders "shall be liable to creditors," that section, so far as it relates to banks and trust companies, as well as sections 595 and 613, limit such liability to "all contracts and liabilities" of the bank or corporation. Under these statutes it is clear that a proceeding for the enforcement of the equal and ratable liability imposed by statute can be maintained only by one or more creditors on behalf of all, and not by one creditor to secure payment of his own debt to the exclusion of others. Pollard v. Bailey, 20 Wall. 520, 22 L. Ed. 376; Terry v. Tubman, 92 U. S. 156, 161, 23 L. Ed. 537; Terry v. Little, 101 U. S. 216, 25 L. Ed. 864; Handley v. Stutz, 137 U. S. 366, and cases cited at page 369, 11 Sup. Ct. 117, 34 L. Ed. 706. The amounts recovered on account of such double liability thus become a trust fund, properly administered in equity and distributed among creditors who by the bill are brought before the court and are made parties to the proceeding. Story's Equity Jurisprudence, § 1252; Cook on Corporations (4th Ed.) vol. 1, § 222. There is in such case a question, common to all stockholders, of the amount of the bank's indebtedness as compared with its assets, and thus of any liability on the part of stockholders. Not only are all creditors directly interested in the collection and distribution, but the stockholders are likewise interested, not only as respects the amount to be recovered for the benefit of creditors, but also of the amount of outstanding stock; for the reason that, although it is alleged in the bill that the entire liability is necessary to be enforced in order to enable payment in full to creditors, every stockholder is at liberty to contest this allegation. The suit below was thus essentially a proceeding for the collection, administration, and distribution of the trust fund. Such proceeding is properly brought in equity. Pollard v. Bailey, supra; Terry v. Tubman, supra; Johnson v. Waters, 111 U. S. 640, 4 Sup. Ct. 619, 28 L. Ed. 547; Handley v. Stutz, supra. See, also, Bailey v. Tillinghast (Sixth Circuit) 99 Fed. 801, 805, 806, 40 C. C. A. 93; In re Jassoy Co. (Second Circuit) 178 Fed. 515, 101 C. C. A. 641; Hornor v. Henning, 93 U. S. 228, 23 L. Ed. 879.

We have not overlooked the settled course of decisions that actions for the recovery of the full statutory liability under the national banking act must be had at law. Casey v. Galli, 94 U. S. 673, 24 L. Ed. 168; United States v. Knox, 102 U. S. 422, 26 L. Ed. 216. But suits for collection under the national banking act differ from the proceedings before us in two important respects: First, that under the national banking act the question whether the assessments shall be for 100 per cent. or less than the full statutory liability rests entirely in the discretion of the comptroller (Kennedy v. Gibson, 8 Wall. 498, 19 L. Ed. 476; Casey v. Galli, supra); and, second, the administration and distribution of the funds collected is not had in the suit instituted for their collection, but is carried on by the comptroller independently of judicial proceedings. But notwithstanding these distinc-

tions, where a suit by a receiver under the national banking act is for less than the full liability, the proceeding is not necessarily at law. A suit in equity may, in proper cases, be maintained on the ground not only that a trust fund is sought to be recovered, and that there is a complication of interest in the questions and matters involved, but for the purpose of avoiding multiplicity of suits. Bailey v. Tillinghast, supra. We find nothing in Hale v. Allinson, 188 U. S. 56, 23 Sup. Ct. 244, 47 L. Ed. 380, opposed to the views we have expressed, for there the suit was merely to recover, by suit in Pennsylvania, the liability of stockholders of a Minnesota corporation whose affairs were being administered in a suit instituted in that state. There was plainly no reason why separate suit should not have been brought against each stockholder, and at law. In our opinion, the suit before us was properly brought in equity, and against all the stockholders.

[5] 4. It is objected that the court acquired no jurisdiction under the bill, for the reason that at the time of its filing none of complainants' claims were due except one (that of Conway), and that this was for the sum of $2,000, exclusive of interest. It is urged that matured claims exceeding $2,000 must be alleged.

It is unnecessary to determine whether, in this proceeding for administering a trust fund, there must be claims actually mature amounting to $2,000, exclusive of interest, for this question is not presented by any assignment of error, nor was it raised in the court below. It is clear that the Circuit Court did not lose jurisdiction over the case, independently of demurrer, by reason of the nonmaturity of sufficient claims to give the court statutory jurisdiction. Schunk v. Moline, etc., Co., 147 U. S. 500, 13 Sup. Ct. 416, 37 L. Ed. 255. Apart from the question of the maturity of the claims, the fact that the claims of some of the complainants did not exceed $2,000 does not affect the jurisdiction of the court in a proceeding of this nature. Handley v. Stutz, supra.

[6] 5. The fact that there are creditors of the bank who were citizens of the state of Kentucky, and who were in a sense represented by complainants, does not, in our opinion, oust the court of jurisdiction on the ground of diversity of citizenship between the parties. Stewart v. Dunham, 115 U. S. 61, 5 Sup. Ct. 1163, 29 L. Ed. 329.

[7] 6. Finally, it is alleged that upon the merits appellant is not subject to the statutory liability upon either the $1,000 stock purchased from the bank or the $8,000 of stock transferred to defendant by Parrish.

First, as to the $1,000 of stock purchased from the bank: This was bought January 10, 1906. This stock remained in defendant's ownership and possession until after the insolvency proceedings, and without any attempt to repudiate the purchase. During this time he received four semiannual dividends of 5 per cent. each. The rule adopted by the courts of the United States with respect to stockholders' liability under the national banking act is thus stated by Mr. Justice Harlan in Scott v. Deweese, 181 U. S. at page 213, 21 Sup. Ct. at page 589 (45 L. Ed. 822):

"If the subscriber became a shareholder in consequence of frauds practiced upon him by others, whether they be officers of the bank or officers of the

government, he must look to them for such redress as the law authorizes, and is estopped, as against creditors, to deny that he is a shareholder, within the meaning of section 5151 [U. S. Comp. St. 1901, p. 3465], if at the time the rights of creditors accrued he occupied and was accorded the rights appertaining to that position."

See, also, Lantry v. Wallace, 182 U. S. 536, 21 Sup. Ct. 878, 45 L. Ed. 1218; Scott v. Abbott (Eighth Circuit) 160 Fed. 573, 583, 87 C. C. A. 475.

The decisions of the Circuit Court of Appeals of Kentucky upon the common-law right of rescission are not binding on this court. However, we find nothing in the decisions of that court to sustain the right of rescission sought to be exercised here. It is true that in Ky. Mutual Inv. Co.'s Assignee v. Schaefer, supra, it was held that where a subscriber for stock is not in fault, but is himself the innocent victim of a fraud which he did not and could not discover before the perpetrator of the fraud failed, he is entitled, as against the assignee for the benefit of creditors, to make any defense which he could make against the assignor. But in the later case of Reid v. Owensboro Savings Bank & Trust Co., 132 S. W. 1026, the Court of Appeals of Kentucky, in passing upon the liability of a holder of the same issue of stock as that held by defendant here, in a suit for dividends paid thereon sought to be recovered back by the receiver, held that when a stockholder has been induced by false and fraudulent representations of the officers of a corporation to purchase his stock, if the corporation is insolvent when the action for rescission or other relief is brought, or if proceedings have been instituted to liquidate its affairs on the ground of insolvency, or rights of creditors will be affected, the shareholder who has been induced by fraud or misrepresentation to purchase stock cannot obtain relief unless he became a shareholder so shortly before the insolvency as not to have had reasonable time or opportunity to investigate its affairs and discover the fraud, nor unless upon discovery he without delay asserts his right to appropriate relief. Upon the facts in the Reid Case, which are similar to those here, it was held that the shareholder was not entitled to rescind. We think it is clear that defendant was properly held subject to the double liability on the $1,000 of stock bought from the bank.

[8] The question of liability on account of the $8,000 of stock bought from Parrish is not so easy of solution. As to the fact of the alleged purchase there is a sharp conflict of testimony between the defendant and Parrish. The former claims that he never even bargained for the stock; that Parrish owed him $12,000 for some Alsop Process Company stock sold by defendant to Parrish; that the latter, in April, 1907, offered him $8,000 of the bank stock in payment of the debt, which was refused; that, although the stock was in defendant's safety deposit box at the time of the failure of the bank, he did not know of its presence there until after that time; that he was out of the country much of the time during the period of the transactions in question, part of his business being transacted by Parrish and perhaps other officers of the bank. There were also credited to defendant's bank account two semiannual dividends of 5 per cent. each (July 5, 1907, and January 30, 1908) on the entire $9,000 of stock standing

188 F.—37

in defendant's name. Defendant testifies that he did not know of these payments, and had not noticed the entries on his passbook until after the failure of the bank; the entries having been made by one of the officers of the bank, pursuant to custom by which the bank book remained at the bank for receiving credits for payments and collections. Parrish, on the other hand, testifies that the defendant purchased the stock January 7, 1907, in exchange for the Process Company stock referred to; that Parrish being unable to turn over the bank stock on that date by reason of its being in pledge, and until money could be borrowed on the Process Company stock, it was arranged that the bank stock should be later transferred to defendant; that three certificates aggregating 80 shares were, on three several dates between March 7 and April 19, 1907, placed by Parrish in defendant's safety deposit box according to previous arrangement; that defendant soon thereafter knew and approved of the delivery of these certificates; that defendant also had and consulted his bank book not long after the payments of the dividends were made; and that it was not until after the failure of the bank that defendant sought to be relieved of the transaction.

From the conflicting testimony of these two witnesses, but for the presumption of defendant's ownership of the stock and the one item of evidence to which we shall presently refer, it would be difficult, if not impossible, to satisfactorily determine the question of defendant's actual purchase of the stock. We think, however, that the burden is upon defendant to show that he did not purchase it. He is presumed to be the owner of it if his name appears upon the books of the bank as such owner, and the burden is upon him to show the contrary. Webster v. Upton, 91 U. S. 65, 72, 23 L. Ed. 384; Turnbull v. Payson, 95 U. S. 418, 24 L. Ed. 437; Finn v. Brown, 142 U. S. 56, 67, 12 Sup. Ct. 136, 35 L. Ed. 936. The Kentucky statute requires every corporation to keep in its principal office a book in which shall be entered the name, post office address, the number of shares of stock held by such stockholder, and the time when each person became such stockholder; also all transfers of stock, stating when and the number of shares transferred, and by and to whom. This book is required to be subject to the inspection of all stockholders and persons doing business with the corporation. The receiver testified that he never found "the particular book of that description," but stated, however, "that all the information as required by that statute is on the stubs of the stock books before me." It seems to be taken for granted, although there may be no express testimony to that effect, that the stubs of the bank stock certificate book show the issue to defendant of the certificates in question. As already said, however, there is no doubt, as we understand the record, that the certificates were actually issued, and were outstanding in defendant's name, and were in his safety deposit box at the time the bank failed. We think these facts prima facie show his ownership of the stock.

The item of evidence to which we have referred is contained in the following written instrument:

"I hereby bargain. sell and convey to A. L. Parrish ($4,000) four thousand par. value of stock in the Alsop Process Company, St. Louis, Mo., for which

said A. L. Parrish agrees to transfer and deliver ($8,000.00) eight thousand dollars par value stock in the Owensboro Savings Bank & Trust Company, Owensboro, Ky., on or before April 1, 1907. Said stock is to be fully paid and unincumbered. This trade and exchange made and entered into on the 7th January, 1907, and signed by both parties."

The instrument bears the signature of Parrish and the purported signature of defendant, who does not deny the signature but is unable to account for it, unless that he signed it without reading it and in ignorance of its contents. We think the evidence satisfactorily shows that defendant did actually sign this instrument. The burden of proof is, in these circumstances, upon him to show that his signature was obtained by misrepresentation or fraud. This we think he has failed to do; and in view of the presumption of his ownership of the stock, and the burden which is thrown upon him by the production of the written instrument, we are constrained to the opinion that defendant must be held to have purchased the stock in April, 1907. If defendant actually and knowingly bought the stock at that time, we think that, under the authorities to which we have referred, he must be held subject to the statutory liability, and that the decree of the Circuit Court which so adjudged was right. He had held the stock for a full year, had received two substantial dividends upon it, and for a year previous had had other stock in the bank. He had abundant opportunity to investigate and ascertain the truth or falsity of the representations made to him, and thus the question of the solvency or insolvency of the bank.

[9] It was proper to allow interest from the date of the commencement of suit. Kaufman v. Tredway, 195 U. S. 271, 25 Sup. Ct. 33, 49 L. Ed. 190; Senn v. Levy, 111 Ky. 318, 63 S. W. 776.

The judgment of the Circuit Court will be affirmed.