## In re EUREKA ANTHRACITE COAL CO.

(District Court, W. D. Arkansas, Ft. Smith Division. June 28, 1912.)

BANKRUPTCY (§ 78*) — INVOLUNTARY PROCEEDINGS AGAINST CORPORATION — RIGHT OF STOCKHOLDERS TO DEFEND—"CREDITOR."

    Under Bankr. Act July 1, 1898, c. 541, § 18b, 30 Stat. 551 (U. S. Comp. St. 1901, p. 3429), which provides that the bankrupt or any creditor may appear and plead to a petition in involuntary bankruptcy, stockholders of a corporation as such cannot appear and defend a proceeding against the corporation, unless such a showing is made as would entitle them to maintain or defend a suit in equity in its behalf.

    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 111, 112; Dec. Dig. § 78.*

    For other definitions, see Words and Phrases, vol. 2, pp. 1713–1727; vol. 8, pp. 7622–7623.]

In the matter of the Eureka Anthracite Coal Company, bankrupt. On motion to strike from the files petition and answer of D. J. Young, R. C. Johnston, and J. B. Johnston. Motion sustained.

G. O. Patterson, of Clarksville, Ark., and H. C. Mechem, of Ft. Smith, Ark., for petitioning creditors.

Hill, Brizzolara & Fitzhugh, of Ft. Smith, Ark., for petitioning stockholders.

YOUMANS, District Judge. An involuntary petition in bankruptcy was filed against the Eureka Anthracite Coal Company, a corporation, by two alleged creditors, the Bank of Clarksville and the Citizens' Fire Insurance Company. D. J. Young, R. C. Johnston, and J. B. Johnston, stockholders of the Eureka Anthracite Coal Company, owning 121.55 shares, have filed what is termed a "petition and answer." The petition in bankruptcy alleges that the Eureka

Anthracite Coal Company is insolvent, and that it committed an act of bankruptcy, in that it did "on the 9th day of May, 1912, admit in writing its inability to pay its debts, and its willingness to be adjudged a bankrupt on that ground." In their petition the stockholders "ask leave as such stockholders to appear and defend the bankruptcy petition." For cause these stockholders say:

"That the Eureka Anthracite Coal Company is not insolvent within the meaning of the Bankruptcy Act, and state that its property at a fair valuation is sufficient in amount to pay its debts; that it is true that in some meeting of said corporation held on the 9th day of May, 1912, some proceeding was had therein in order to have its affairs placed in the court of bankruptcy, instead of being administered in the state court in a receivership suit therein pending; that the Bank of Clarksville and the Citizens' Fire Insurance Company are each managed and controlled principally by the same directors who manage and control the Eureka Anthracite Coal Company; that the Bank of Clarksville claims that it owns bonds to the amount of $80,000 of said Eureka Anthracite Coal Company and the Citizens' Fire Insurance Company claims it owns bonds to the amount of $20,000; whereas, these petitioners are informed and believe, and so allege, that they have not purchased said bonds bona fide, and are not innocent holders of the same, and they have not paid the Eureka Anthracite Coal Company therefor."

The petitioning creditors have filed a motion to strike from the files the petition and answer of Young, Johnston and Johnston because they "are not parties to this proceeding and cannot become such." The matter comes up for consideration on the motion to strike. It will be considered in connection with the request of the stockholders for leave to appear and defend for the bankrupt.

The Bankruptcy Act provides that:

"The bankrupt, or any creditor may appear and plead to the petition within five days after the return day, or within such further time as the court may allow." Section 18b.

In this instance the alleged bankrupt is a corporation. It is a distinct legal entity. One or more of its stockholders as such cannot ordinarily represent it either in the bringing of a suit, or in defending against one. Park v. N. Y. & K. Oil Co., 26 W. Va. 486; Henry v. Elder, 63 Ga. 347; Miller v. Murray, 17 Colo. 408, 30 Pac. 46; Home Mining Co. v. McKibben, 60 Kan. 387, 56 Pac. 756; Waymire v. San F. & San Mateo Ry. Co., 112 Cal. 646, 44 Pac. 1086; Henry v. Travelers' Ins. Co., 16 Colo. 179, 26 Pac. 318. Section 1 of the Bankruptcy Act provides that the term "creditor," as used therein, "shall include any one who owns a demand or claim provable in bankruptcy." Stockholders as such are not creditors of a corporation whose stock they own. Cook v. Emmet Perpetual & Mutual Building Association, 90 Md. 284, 44 Atl. 1022. The petitioners have no standing either as representatives of the corporation or as creditors. Creditors of a corporation who happen also to be stockholders and directors in the company are not precluded by reason of such relation from commencing proceedings in involuntary bankruptcy against the corporation. In re Rollins Gold & Silver Mining Co. (D. C.) 102 Fed. 892.

In proceedings at law stockholders cannot appear and answer or

defend either for the corporation or in their own behalf. 2 Clark & Marshall on Private Corporations, § 1692. In certain cases in equity, however, a stockholder may intervene and set up any defense which could· properly be made by the corporation. Bronson v. La Crosse Railroad Co., 69 U. S. 283, 17 L. Ed. 725. "Proceedings in bankruptcy generally are in the nature of proceedings in equity." Bardes v. Hawarden. Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175. In a proper case, therefore, stockholders may intervene in a suit in bankruptcy. In the case of Hawes v. Oakland, 104 U. S. 450, 26 L. Ed. 827, the rule was stated that would warrant the bringing by a stockholder in equity in his own name of a suit founded on a right of action in a corporation. In that connection the court said:

"We understand that doctrine to be that, to enable a stockholder in a corporation to sustain in a court of equity in his own name, a suit founded on a right of action existing in the corporation itself, and in which the corporation itself is the appropriate plaintiff, there must exist as the foundation of the suit some action or threatened action of the managing board of directors or trustees of the corporation which is beyond the authority conferred on them by their charter or other source of organization; or such a fraudulent transaction completed or contemplated by the acting managers, in connection with some other party, or among themselves, or with other shareholders as will result in serious injury to the corporation, or to the interests of the other shareholders; or where the board of directors, or a majority of them, are acting for ·their own interest, in a manner destructive of the corporation itself, or of the rights of the other shareholders; or where the majority of shareholders themselves are oppressively and illegally pursuing a course in the name of the corporation, which is in violation of the rights of the other shareholders, and which can only be restrained by the aid of a court of equity. Possibly other cases may arise in which, to prevent irremediable injury, or a total failure of justice, the court would be justified in exercising its powers, but the foregoing may be regarded as an outline of the principles which govern this class of cases. But, in addition to the existence of grievances which call for this kind of relief, it is equally important that, before the shareholder is permitted in his own name to institute and conduct a litigation which usually belongs to the corporation, he should show to the satisfaction of the court that he has exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances, or action in conformity ·to his wishes. He must make an earnest, not a simulated effort, with the managing body of the corporation, to induce remedial action on their part, and this must be made apparent to the court. If time permits or has permitted, he must show, if he fails with the directors, that he has made an honest effort to obtain action by the stockholders as a body, in the matter of which he complains. And he must show a case, if this is not done, where it could not be done, or it was not reasonable to require it."

Equity rule No. 94 (29 Sup. Ct. xxxvii) was promulgated to give effect to that decision. In effect, the same rule applies to a proposed defense by a stockholder of a suit against a corporation. Ex parte Cutting, 94 U. S. 22, 24 L. Ed. 49; In re Metropolitan Railway Receivership, 208 U. S. 90, 28 Sup. Ct. 219, 52 L. Ed. 403; Minot v. Mastin, 95 Fed. 739, 37 C. C. A. 234; United States v. Philips, 107 Fed. 824, 46 C. C. A. 660; Simkins' Federal Suit in Equity, 484.

In this case there is no allegation that the directors have been requested to make defense. There is an express statement in the stock-

holders' petition and answer that in "some meeting" of the corporation on the 9th day of May, 1912, "some proceeding was had therein in order to have its affairs placed in the court of bankruptcy, in lieu of being administered in the state court in a receivership suit therein pending." The meeting referred to as "some meeting" must, in the absence of an allegation to the contrary, be presumed to have been a legal meeting. The proceeding referred to as "some proceeding" must for the same reason be regarded as a legal proceeding. A legal meeting of the corporation had power to take such action. In re Kenwood Ice Co. (D. C.) 189 Fed. 525. As shown in the petition and answer, that course was taken in preference to having the "affairs" of the corporation "administered" in a receivership suit in a state court. There is no allegation that any one will derive any advantage from the administration of the affairs of the corporation in the bankrupt court. There is nothing to show that the discretion of the directors or stockholders in making the order was not properly exercised. It was apparently a choice between two courts. There could have been nothing illegal, improper, or fraudulent in the choice of the bankruptcy court. In re Metropolitan Railway Receivership, 208 U. S. 111, 28 Sup. Ct. 219, 52 L. Ed. 403.

The stockholders further allege with reference to the bonds which the petitioning creditors claim to own that:

"They have not purchased said bonds bona fide and are not innocent holders of the same, and they have not paid the Eureka Anthracite Coal Company therefor."

It is not sufficient to allege that one did not purchase something bona fide, nor is it sufficient to allege that one is not an innocent holder. The facts must be shown from which the conclusions may be drawn. The allegation that the alleged creditors have not paid the corporation for the bonds is not sufficient. They may have acquired the bonds through some other source than the corporation. "A bona fide holder for value of negotiable paper is one who has acquired title in the usual course of business for a valuable consideration in good faith from one capable of transferring it, or from one in possession of the title with an apparent right to transfer it, and without notice or knowledge of defenses, or circumstances which should put him on inquiry." 7 Cyc. 924. The presumption is that the alleged creditors are bona fide holders of the bonds. The allegations of the petition and answer do not state facts that would overturn that presumption, neither do those allegations state facts sufficient to authorize the stockholders to intervene in this suit.

The motion to strike will be sustained.