In re RECORDING DEVICES CO.

(District Court, S. D. Ohio, W. D., at Dayton. September 17, 1924.)

1. Bankruptcy ⊜═76(1) — Preferred stockholders are not "creditors," who may file an involuntary petition against the corporation.

Preferred stockholders of an Ohio corporation are not "creditors," who may file an involuntary petition in bankruptcy against the corporation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Creditor.]

2. Bankruptcy ⊜═318(3)—Stockholders not entitled to rescind purchases for fraud after insolvency and share in assets with general creditors.

Preferred stockholders of a corporation, who held their stock for from three to five years and received dividends thereon, during which time under the state statutes the books of the corporation were open to their inspection and it was required to make annual reports showing its financial condition, cannot rescind their purchases on the ground that they were induced by fraud and misrepresentation, after insolvency of the corporation, and be allowed to share in its assets with general creditors, whose claims largely arose while they were such stockholders.

In Bankruptcy. In the Matter of the Recording Devices Company, alleged bankrupt. On application for judgment on pleadings. Petition dismissed.

L. F. Sater and F. S. Monnett, both of Columbus, Ohio, and E. W. Cist, of Cincinnati, Ohio, for petitioners.

E. C. Turner, of Columbus, Ohio, for alleged bankrupt.

SATER, District Judge. The plaintiffs, who are preferred stockholders of the defendant corporation and claim to be creditors of it on account of the hereinafter alleged fraud claimed to have been perpetrated upon them at the time they respectively purchased their stock, have petitioned to have it adjudged a bankrupt. Nine of them purchased their stock in 1918 and one in 1920. Each petitioner charges that at the time of his purchase the defendant through its officers and agents falsely represented to him that it was solvent and earning large profits and that the dividends which were regularly paid on its preferred stock were earned and paid out of its prof-

its. It is averred by each of the petitioners that, relying upon the truth of such false representations, he purchased the stock held by him and that he did not discover and could not by due diligence have discovered the fraud committed upon him, until the appointment of receivers by the state court for such company on July 20, 1923. Each of the petitioners admits the receiving of dividends upon his stock, makes offer to return the same to defendant's estate in such manner as the court may direct, and asks that the sale of stock be rescinded and declared null and void and that his claim be allowed so that he may participate in the distribution of such estate. There is no express averment of the amount of dividends received or of the dates of their payment. The necessary inference is they were paid regularly at dividend-paying periods. The above statement of the petitioners' position is based on their tendered amended petition. Authority to file it is granted, the original petition not stating a cause of action. The alleged act of bankruptcy is the defendant's insolvency, and that within four months preceding the date of the filing of the petition herein, defendant committed an act of bankruptcy by applying on July 18, 1923, for a receiver to liquidate its assets, and indebtedness, the receivers being appointed, it is claimed, because of defendant's insolvency.

The defendant's answer denies that the petitioners or any of them are creditors; that any of them has a provable claim of any kind whatsoever; that it committed an act of bankruptcy, or that it applied for a receiver for its property, or that a receiver was put in charge of the same because of its insolvency. The answer further avers that, if any of the petitioners were defrauded in the purchase of stock as alleged in the petition, such person thereafter received, accepted and retained dividends on such stock and allowed himself to be held out as a stockholder when other persons dealt with the corporation, acquiring its stock and rights against it without knowledge of petitioners' alleged claims. The same averments are embodied in the answer filed by the receivers appointed by the state court. The defendant and its receivers have notified the court that they will file their respective answers to the amended petition and that each of the answers will contain the averment, additional to those above mentioned, that the defendant's indebtedness, or at least the major part of it, accrued after the date of the stock purchases by the

respective petitioners. The case will therefore be treated as if the amended petition and the answers thereto containing the above averments were on file.

The case came on for hearing on the ability of the petitioners to maintain their action. The petition and the amendment theretofore filed in the state court and the order based thereon appointing receivers were submitted at the time of the hearing here for the court's consideration.

[1] May a person occupying the position only of these stockholders petition to have the corporation which issued their stock adjudged a bankrupt? In Ohio the relation of the holder of preferred stock is in some aspects similar to that of a creditor, but he is not a creditor save as to dividends after the same are declared. He cannot by virtue of his stock certificate be both a stockholder and a creditor. Miller v. Ratterman, 47 Ohio St. 141, 154, 24 N. E. 496; Cook, Corp. (4th Ed.) § 267; Field v. Lamson & Goodnow Mfg. Co., 162 Mass. 388, 389, 390, 38 N. E. 1126, 27 L. R. A. 136; Collier, Bankr. (13th Ed.) 1216; In re Eureka Anthracite Coal Co. (D. C.) 197 Fed. 216, 217. The averment in the petition that the petitioners are creditors is therefore unavailing. They merely seek to be transmuted into such. In Collier, Bank. (13th Ed.) 17, it is said: "Stockholders of a corporation as such are not creditors of a corporation in so far as filing an involuntary petition against the corporation is concerned." The same statement is repeated on page 1216. Such also is the necessary teaching of In re Eureka Anthracite Coal Co. (D. C.) 197 Fed. 216. In Missouri Valley Cattle Loan Co. v. Alexander, 276 Fed. 266, 270, C. C. A. 8, it was held that subscribers to the stock of a corporation, who merely allege that their subscriptions were induced by fraud, have not the standing of creditors who may maintain an involuntary petition against it, unless there has been an adjudication that they are entitled to rescind their subscription contracts and to recover the amounts paid thereon.

[2] If the petitioners have the right to rescind their respective contracts for the purchase of their preferred stock and thus acquire provable claims, what would be their status? The necessary inference to be drawn from all the pleadings submitted and from the order made by the state court is that the business of the defendant continued down to the date of and even after the appointment of receivers and that dividends were paid on dividend-paying dates

down to July 18, 1923. None of the petitioners attempted to repudiate or rescind his stock purchases until almost four months after the appointment of the receivers. At all times prior thereto subsequent to their respective purchases of stock, they consented to be held out as stockholders of the defendant company. No creditors, common or preferred, have intervened or petitioned for the adjudication of the defendant as a bankrupt. The defendant's indebtedness or the greater part of it was incurred after the petitioners became stockholders in the defendant company. The defendant corporation being insolvent, the preferred stockholders can receive nothing until all the corporate liabilities are satisfied. Gen. Code Ohio, § 8671. On the facts presented, the defendant's assets are insufficient to pay its creditors. The petitioners therefore can take nothing, if they should be permitted to prove their claims. See, also, In re Morris Bros. (D. C.) 282 Fed. 670, and (C. C. A.) 293 Fed. 294. If they were permitted to share in the corporate assets, the distributive share of the innocent common creditors would be diminished.

The payment of dividends naturally tended to awaken the belief the defendant was prosperous, but considering the period during which each of the petitioners held his stock, the conclusion follows that, in view of the facts, the Ohio statutes, and the settled applicable law, the petitioners by the exercise of due diligence could and would have discovered the defendant's true financial condition. Section 8673, Ohio General Code, provides that the books and records of the defendant company should at all times be open to the inspection of every stockholder. If the right of inspection had been denied, it could have been enforced on application to the courts. Cincinnati Volksblatt Co. v. Hoffmeister, 62 Ohio St. 189, 56 N. E. 1033, 48 L. R. A. 732. At all times during the several petitioners' ownership of stock, the defendant corporation was required annually to make a statement of its financial condition, setting forth its assets and liabilities, and to furnish to each stockholder a true copy of such statement, with a list of its stockholders and their place of residence. Section 8685. The failure to make such annual report would be sufficient to provoke inquiry and put stockholders on their guard. If such report were made and it was not satisfactory, any stockholder was at liberty to avail himself of the right of inspection secured to him by the statute. Annually between the 1st of May and the 1st of July the defendant was required to file a written report with the state tax commission, verified by one of its officers, showing the amount of authorized capital stock, the par value of the same, the amount of capital stock subscribed, the amount of stock issued and outstanding, and the amount of capital paid up. Sections 5495, 5496, 5497. The entire public, including those who may have become specific creditors, were entitled to act upon the theory that the capital stock to be paid in was as represented, and that the persons who had subscribed for stock or to whom stock had been issued had actually paid into the corporation at the risk of the business the sum which such reports showed. The showing made by such annual reports, as well as by the annual reports submitted to the stockholders, formed a basis for credit and persons who gave credit were authorized to act upon the representations made in such reports.

Petitioners have no defense in the fact, if such exists, that creditors did not know they were stockholders. If they were ignorant of the corporation's insolvency and transactions they nevertheless knew it was engaged in business and might incur debts. Credit is given to a corporation with little or no knowledge of who the stockholders are, but in reliance on the fact that the rights of stockholders are subordinate to those of creditors. In re Morris Bros., 293 Fed. 294, 297 (C. C. A. 9). The insistence of defendants is that it would be inequitable that those who have held themselves out as and occupied the position of stockholders for a term of years should, after corporate insolvency has occurred, be admitted to share in corporate assets with common creditors who became such by virtue of such reports, especially in view of the fact that the petitioners had the means of knowing the company's financial condition but never availed themselves of or made inquiry touching the same. Cases are found in which stockholders, who were not petitioning creditors and who have not been wanting in diligence and have not been otherwise estopped from asserting their claims, have been allowed to rescind their contracts of purchase and prove their claims, especially if there were funds in the estate applicable to their satisfaction. Such, for instance, are the cases of In re Morris (D. C.) 282 Fed. 670, and (C. C. A.) 293 Fed. 294, and In re Wm. C. Jones Co. (D. C.) 289 Fed. 262, in the opinion of which, however, is a succinct statement of the circumstances

under which rescission will not be allowed. See, also, Newton Nat. Bank v. Newbegin, 74 Fed. 135, 20 C. C. A. 339, 33 L. R. A. 727; Davis v. Louisville Trust Co., 181 Fed. 10, 104 C. C. A. 24, 30 L. R. A. (N. S.) 1011 (6th Cir.).

But the question here is: May the petitioners, after having received dividends for so long a time and after having failed in diligence to ascertain the financial standing of the defendant company, rescind their contract and share in the distribution of defendant's estate with common creditors whose claims accrued while the petitioners were stockholders? The import of the ruling made in Alsop v. Conway, 188 Fed. 568, 110 C. C. A. 366 (6th Cir.), is that a stockholder in a corporation, who retained his stock and received dividends thereon for a considerable period (in that case for more than two years) and until insolvency proceedings against the corporation had been commenced, cannot then rescind on the ground that he was induced to purchase the stock from the corporation by the fraud and misrepresentation of its officers and agents. One of the grounds on which rescission was refused in Re Racine Auto Tire Co., 290 Fed. 939 (C. C. A. 7), was the repeated ratification of their position as stockholders by their acceptance of dividends. The same fact was present in the bankruptcy case of Scott v. Abbott, 160 Fed. 573, 87 C. C. A. 475 (8th Cir.) What was regarded as a just and practical general rule was thus stated (160 Fed. 583, 584, 87 C. C. A. 485, 486):

"That when one has for a considerable period of time prior to the failure of a corporation occupied the position of one of its stockholders, and exercised and enjoyed the rights, privileges, and fruits of that relation, including the chance of enhanced value of his holdings, when fortune frowns, and the chances turn against him, it is too late to assert, as against creditors of the corporation, the right to rescind his contract of stock subscription on the ground of false representations after a state of insolvency has supervened, and after proceedings to wind up the corporation for the benefit of creditors have been or are about to be instituted. A case involving the foregoing elements inevitably discloses such want of diligence, such delay or inactivity, or such counter equities in favor of creditors as within well-recognized principles precludes resort to a court of equity for redress by a defrauded stockholder. The rule just announced has not been established without opposition and vigorous dissent, but we think it is now so firmly fixed as to command general obedience."

See, also, Salter v. Williams (D. C.) 219 Fed. 1017; In re W. A. Silvernail Co. (D. C.) 218 Fed. 977; Upton v. Tribilcock, 91 U. S. 45, 54, 55.

In Newton Nat. Bank v. Newbegin, 74 Fed. 135, 139, 140, 20 C. C. A. 339, 33 L. R. A. 727, it is held that the right to rescission does not exist, if there has been some lack of diligence on the part of the stockholder in discovering the fraud of which he complains, or if debts have been contracted by the corporation subsequent to the acquisition of stock or subscription therefor, which either give the corporate creditors superior equitable rights or estop the shareholder as against a corporate creditor from asserting that he was not a shareholder. Cook, Corp. (4th Ed.) § 164, states:

"In this country the effect of corporate insolvency upon the right of a subscriber to rescind his contract for fraud has not been passed upon so often as in England. The decisions, however, clearly hold that corporate insolvency is generally a bar to such rescission. In the bankruptcy courts, also, under the late Bankruptcy Law (that of 1867), such a rule was upheld."

One of the cases cited in support of the text (Farrar v. Walker, Fed. Cas. No. 4,679, decided by Mr. Justice Miller) is to the effect that, where a person was induced by false and fraudulent representations of corporate directors and officers to take stock in a corporation two years before its bankrupcy, in payment of which he gave his note secured by deed of trust on real estate, and during that period made no inquiry as to the corporation's true condition, but suffered his note to be held out to the public as a corporate asset, the lapse of time is too lengthy to allow the fraud to be pleaded against the creditors of the corporation, as represented by the assignee in bankruptcy, in avoidance of the obligation expressed in the note. The stockholder in that case had a right of access at all times to the corporate books. It was held to be the stockholder's duty to interest himself in the company's management far enough to see that what was said when he purchased his stock was true and that its directors were honest, but that for two years he had stood by, did nothing, made no inquiry and conducted no investigation, and that his prayer for relief was therefore too late.

The question raised as to whether receivers were appointed by the state court because of

the defendant's insolvency has not been considered, the reasons above assigned being deemed sufficient to warrant dismissal. An order may be taken in accordance with the foregoing, after the amended petition and the corrected answers have been filed.